40 A.3d 217 (2012)
MIDDLETOWN TOWNSHIP, Petitioner
v.
UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.
No. 189 C.D. 2011.
Commonwealth Court of Pennsylvania.
Submitted on Briefs October 14, 2011.
Decided March 21, 2012.
*220 Tracy Paul Hunt, Newtown, for petitioner.
Mary Beth Hamilton, Assistant Counsel, Harrisburg, for respondent.
BEFORE: LEADBETTER, President Judge[1], and BROBSON, Judge, and McCULLOUGH, Judge.
OPINION BY Judge BROBSON.
Petitioner Middletown Township (Employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed, as modified, a decision and order of a Referee, thereby granting unemployment compensation benefits to Raymond A. Stepnoski (Claimant). For the reasons set forth below, we affirm on alternative grounds.
Claimant was employed as the Township Manager by Employer until Employer's Board of Supervisors voted not to renew Claimant's contract. Thereafter, Employer and Claimant unsuccessfully attempted to negotiate a new employment agreement. Claimant ceased working for Employer on July 8, 2010, and he applied for unemployment benefits. The Allentown UC Service Center (Service Center) noted that there was a conflict between whether Claimant quit or was discharged, and it found that Claimant voluntarily quit his employment. (Certified Record (C.R.), Item No. 3.) The Service Center then determined that Claimant was ineligible for unemployment benefits under Section 402(b) of the Unemployment Compensation Law (Law),[2] because he voluntarily terminated his employment without cause of a necessitous and compelling nature. (Id.) Claimant appealed.
During the hearing before the Referee, Claimant testified to the circumstances surrounding his separation from employment. (Reproduced Record (R.R.), Item No. 7a.) Claimant testified that Employer's Board of Supervisors voted on June 7, 2010, to invoke the termination clause in his employment contract, which was set to expire on July 9, 2010, because "they [did not] like the contract."[3] (Id. at p. 5.) Instead, the Board of Supervisors wanted a contract that provided less compensation and fewer benefits and eliminated Claimant's vehicle allowance. (Id. at p. 6.) Employer *221 informed Claimant by letter dated June 8, 2010, that the Board of Supervisors voted to terminate his employment prior to its automatic renewal date. (Id.) Employer also notified him that the letter served as his thirty-day written notice of termination, consistent with his employment contract.[4] (Id.) Claimant fulfilled his obligations under his employment agreement and worked until July 8, 2010. (Id. at p. 7.) The contract's anniversary date was July 9th for purposes of renewal.
On cross-examination, Claimant testified that he spoke with Tracy Hunt, Employer's counsel, on a few occasions prior to July 8, 2010, regarding a proposed new contract. (Id. at p. 10.) Claimant also acknowledged receiving a letter from Employer's counsel, dated July 7, 2010 (the day before his last day of employment), wherein Employer's counsel stated that they had met two weeks earlier and that Employer's counsel had advised Claimant that Employer was offering a new employment contract centered on certain enumerated provisions. (Id. at p. 11-13.) The letter also accurately recited the terms of Claimant's counter-offer.[5] (Id.) Claimant also testified on cross-examination that he did not accept the terms that were offered because he asked for a contract and never received one.[6] (Id. at p. 15.)
Following a hearing, the Referee issued a decision and order, reversing the Service Center's determination, thereby granting Claimant unemployment compensation benefits. (C.R., Item No. 14.) Although the Referee agreed with the Service Center's determination that Claimant had voluntarily quit his employment, the Referee concluded that Claimant established necessitous and compelling reason for voluntarily leaving his employment based upon Employer's proposed substantial unilateral changes to the terms and conditions of Claimant's employment, including reductions *222 in remuneration, subsequent to Employer's decision not to renew Claimant's previous employment agreement. (Id.)
Employer appealed to the Board, which affirmed the Referee's decision and order with modification. (C.R., Item No. 19.) Contrary to the Referee's decision, the Board determined that Claimant had been discharged from his employment, but that Employer failed to prove that the discharge was for willful misconduct. (Id.) In so doing, the Board made the following findings of fact:
1. The claimant was last employed as the township manager by Middletown Township for two years and his last day of work was July 8, 2010.
2. The claimant was employed under an employment agreement that provided for automatic renewal each year on July 9 unless the Township Board of Supervisors (employer) gave the claimant 30 days notice that it was not renewing his contract.
3. On June 7, 2010, the employer voted not to renew the claimant's contract.
4. On June 8, 2010, the employer sent the claimant a letter stating that it was not renewing his contract.
5. Subsequent to the nonrenewal, the employer attempted to negotiate a new contract with the claimant that eliminated the automatic renewal provision, eliminated the automatic pay raise, eliminated a $500.00 car allowance, required the claimant to contribute toward medical benefits and revised the severance package.
6. The claimant provided the employer with a counteroffer, which the employer rejected.
7. The claimant fulfilled his obligations under the existing contract by working until through [sic] July 8, 2010.
8. The employer terminated the claimant's employment when it voted not to renew his contract.
(Id.)
In determining that Employer discharged Claimant and failed to prove that it discharged Claimant for willful misconduct, the Board reasoned that it is undisputed that Employer voted on June 7, 2010, to terminate Claimant's employment contract, with his last day of employment being July 8, 2010. (Id.) After Claimant's contract was terminated, Employer attempted to negotiate a new contract, but the negotiations were unsuccessful. (Id.) For those reasons, the Board concluded that Claimant's separation was involuntary. (Id.) Thus, Employer had the burden to prove that Claimant's discharge was for willful misconduct in connection with his work, in accordance with Section 402(e) of the Law.[7] (Id.) Employer did not allege that Claimant's actions were unsatisfactory, and, therefore, the Board must conclude that Employer failed to prove willful misconduct. (Id.) The Board noted that even if Claimant had voluntarily quit his employment, he would have had cause of a necessitous and compelling nature because Employer was attempting to make unilateral and substantial changes in the terms and conditions of Claimant's employment. (Id.) Employer petitioned this Court for review of the Board's order.
On appeal,[8] Employer essentially argues that the Board's finding that Employer *223 terminated Claimant's employment when it voted not to renew his employment contract is not supported by substantial evidence. Employer also argues that the Board committed an error of law when it analyzed Claimant's entitlement to benefits under Section 402(e) of the Law, relating to discharge for willful misconduct, because it should have analyzed the matter under Section 402(b) of the Law, relating to voluntary termination of employment without cause of a necessitous and compelling nature. Applying the alternative analysis offered by the Board under Section 402(b) of the Law, Employer argues that the Board committed an error of law when it concluded that Claimant had cause of a necessitous and compelling nature for voluntarily terminating his employment.
First, we will address Claimant's argument that substantial evidence does not exist to support the Board's findings that Employer terminated Claimant's employment. Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. Johnson v. Unemployment Comp. Bd. of Review, 94 Pa.Cmwlth. 24, 502 A.2d 738, 740 (1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. Id. A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. Taylor v. Unemployment Comp. Bd. of Review, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. Penflex, Inc. v. Bryson, 506 Pa. 274, 286, 485 A.2d 359, 365 (1984). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." Tapco, Inc. v. Unemployment Comp. Bd. of Review, 168 Pa.Cmwlth. 292, 650 A.2d 1106 (1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. Johnson v. Unemployment Comp. Bd. of Review, 95 Pa.Cmwlth. 183, 504 A.2d 989, 990 (1986).
Employer appears to argue that substantial evidence of record does not exist to support the Board's findings that "[a]fter the claimant's contract was terminated, the employer attempted to negotiate a new contract" and "[t]he employer terminated the claimant's employment when it voted not to renew his contract." (Board opinion, Finding of Fact (F.F.) nos. 3 and 8, respectively.) Instead, Employer argues, its Board of Supervisors, who are responsible for hiring the Township Manager, merely voted on June 7, 2010, to not renew the then-existing contract of employment under the then-existing terms. Concurrently, the Board of Supervisors instructed its counsel to enter into negotiations with Claimant for a new employment agreement. Employer then gave Claimant the thirty-day notice required by the then-existing employment agreement, and it "stood ready to renew Claimant in his role as Township Manager under new terms fairly arrived at via a negotiated process, prior to the existing contract's anniversary *224 date of July 9, 2010." (Employer's brief at 7.) Employer contends that it made an offer to employ Claimant at the same salary level, but with a modest reduction in certain fringe benefits, which Claimant rejected. Instead, Claimant counter-offered, seeking increased salary and fringe benefits, which Employer rejected. No agreement was reached prior to the expiration of the existing contract. For those reasons, Employer argues that substantial evidence does not exist to support findings that Employer terminated Claimant's employment. Rather, Claimant voluntarily left employment when his contract expired under its own terms and negotiations failed to produce a new employment contract.
Claimant counters that substantial evidence exists to support findings that Employer terminated his employment because Employer (not Claimant) took action to terminate his employment when the Board of Supervisors voted to invoke the termination clause of the employment contract (which otherwise would have renewed automatically on July 9, 2010), and informed him of his termination via letter dated June 8, 2010. Claimant counters that it is irrelevant that Employer sought to negotiate new contract terms after if terminated his employment.
We agree with Claimant that substantial evidence of record exists to support the specific findings that "[a]fter the claimant's contract was terminated, the employer attempted to negotiate a new contract" and "[t]he employer terminated the claimant's employment when it voted not to renew his contract." (Board's opinion, F.F. nos. 3 and 8, respectively.) Based upon the evidence summarized above, a reasonable person could find that Employer made a decision on June 7, 2010, to terminate Claimant's employment, effective July 8, 2010 (the last day Claimant worked and the date on which his then-existing employment contract expired) and, thereafter, attempted to negotiate a new contract with Claimant. As we will discuss below, however, such findings do not render irrelevant the fact that Employer sought to negotiate a new contract after it informed Claimant that his employment was terminated.
Next, we will address Employer's argument that the Board committed an error of law when it analyzed Claimant's entitlement to benefits under Section 402(e) of the Law, relating to discharge for willful misconduct, because it should have analyzed the matter under Section 402(b) of the Law, relating to voluntary termination of employment without cause of a necessitous and compelling nature. We agree with Employer that the Board should have analyzed this matter under Section 402(b) of the Law.
Whether a Claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to this Court's review and must be determined from a totality of the facts surrounding the cessation of employment. Key v. Unemployment Comp. Bd. of Review, 687 A.2d 409, 412 (Pa.Cmwlth. 1996). "It is a claimant's burden to prove that his separation from employment was a discharge." Key, 687 A.2d at 412. If a claimant proves that he was discharged, then the burden to prove that the claimant was discharged for willful misconduct is on the employer. Id. at 412-13. If a claimant fails to prove that he was discharged, then the claimant has the burden to prove necessitous and compelling reasons for quitting. See Empire Intimates v. Unemployment Comp. Bd. of Review, 655 A.2d 662, 664 (Pa.Cmwlth.1995).
In Hospital Service Association of Northeastern Pennsylvania v. Unemployment Compensation Board of Review, 83 *225 Pa.Cmwlth. 165, 476 A.2d 516 (1984), this Court explained that "[c]laimants who, while employed, refuse to accept an offer of continued employment are deemed to have quit their position, and are thus subject to Section 402(b) of the [Law], which denies compensation to a claimant who `voluntarily [leaves] work without cause of a necessitous and compelling nature.'" Hospital Serv. Ass'n of Ne. Pa. v. Unemployment Comp. Bd. of Review, 476 A.2d at 518 (emphasis and alteration in original). In Hospital Service Association, the claimants were employed as claims processors, and they worked for employer during the night shift. The employer informed the claimants in March that the night shift would be eliminated in May of that year, but that each claimant could continue employment after that date by accepting a position on the day shift. The claimants rejected the offer of continued employment, citing child care needs. Again in May, the employer offered the claimants continued work on the day shift, which they rejected due to their conflicting childcare obligations. The claimants subsequently left work upon elimination of the night shift in May, and they filed for unemployment compensation benefits. On appeal to this Court, we considered whether Section 402(b) of the Law or Sections 402(a) and 402(a)(1) of the Law[9] applied. In so doing, we noted that there was no contention that an offer of suitable employment was made after the claimants became unemployed. Rather, the claimants remained employed at the time that offers of continued employment were made in March and May. For that reason, we concluded that the Board properly applied Section 402(b) of the Law, relating to voluntarily leaving work without cause of a necessitous and compelling nature.
In Delaney v. Unemployment Compensation Board of Review, 133 Pa.Cmwlth. 107, 574 A.2d 1198 (1990), a claimant was employed at an investment firm that was going to be purchased by another company (other employees). In anticipation of the other employees taking control of the firm, the firm offered the claimant a written employment contract establishing the terms of the claimant's continued employment. The claimant refused to sign the employment contract, and he was laid off by the other employees before they took control of the firm. The claimant applied for unemployment compensation benefits, which the UC Service Center denied under Sections 402(a) and 402(h) of the Law.[10] Following a hearing, the referee determined that the claimant's separation fell under Section 402(b) of the Law, and the referee denied benefits. The Board concluded, however, that the claimant was disqualified to receive benefits under Section 402(a) of the Law. On appeal, this Court reversed. Applying the reasoning set forth in Hospital Service Association, *226 we held that the claimant was deemed to have quit his position because he refused to accept an offer of continued employment. Thus, Section 402(b) of the Law was applicable.
This Court in Shrum v. Unemployment Compensation Board of Review, 690 A.2d 796 (Pa.Cmwlth.1997), applying the reasoning set forth in Delaney, considered whether a claimant's separation from employment was due to a voluntary quit under Section 402(b) of the Law or a discharge under Section 402(e) of the Law, just as this Court must consider in the case now before it. In Shrum, the claimant was employed as a technical writer of instructions for product documentation in the use of computer software and worked under a confidentiality agreement. The company for which she worked was acquired by another company. The employer (either the original company or the acquiring company) requested employees to sign, on a take-it-or-leave-it basis, a new confidentiality agreement that imposed more restrictions on employees in order to work for the acquiring company. The claimant refused to sign the confidentiality agreement "because she believed that it would significantly change the terms and conditions of her employment." Shrum, 690 A.2d at 799. The employer then asked the claimant to resign. When she refused to resign, the employer escorted her off the premises. The referee in Shrum granted benefits under Section 402(e) of the Law, having determined that the employer discharged the claimant and that the employer failed to establish that the claimant engaged in willful misconduct. The Board reversed, concluding that the claimant voluntarily resigned her position without cause of a necessitous and compelling nature under Section 402(b) of the Law. On appeal, we noted in Shrum that the claimant knew that she would lose her job if she refused to sign the agreement and that "[b]y refusing to sign, [the c]laimant chose to refuse an opportunity for continued employment." Id. at 800. Thus, we concluded that the claimant's refusal constituted a voluntary resignation from her employment, and we then considered whether necessitous and compelling reasons existed to voluntarily terminate the employment relationship.
A review of the above case law reveals that the concept set forth in Hospital Service Association to determine whether Sections 402(a) and 402(a)(1) of the Law or Section 402(b) of the Law applythat "[c]laimants who, while employed, refuse to accept an offer of continued employment are deemed to have quit their position, and are thus subject to Section 402(b) of the [Law], which denies compensation to a claimant who `voluntarily [leaves] work without cause of a necessitous and compelling nature'"applies equally to determining whether Section 402(b) of the Law or Section 402(e) of the Law apply. Hospital Service Association, 476 A.2d at 518 (emphasis and alteration in original).
In order to determine whether the Board properly determined that Section 402(e) of the Law applies to the instant matter, we must examine the findings of fact issued by the Board. In addition to finding that Employer voted on June 7, 2010, to terminate Claimant's employment, effective July 8, 2010, the Board found that "subsequent to the non-renewal, the employer attempted to negotiate a new contract," which Claimant did not accept. (Board's opinion, F.F. no. 5.) The Board also found that Claimant presented Employer with a counter-offer, which Employer rejected. (Id., F.F. no. 6.)
A review of the findings of fact reveals that this situation is most akin to the situation before the Court in Hospital Service Association. Here, although Employer *227 voted on June 7, 2010, to terminate Claimant's employment, Claimant remained employed by Employer through July 8, 2010. These circumstances are similar to those in Hospital Service Association, where the employer informed the claimants in March that their employment would be terminated in May. In both cases, the claimants were notified of their termination prior to the effective date of their termination and continued their employment until the effective date of their termination. Furthermore, in the case now before us, prior to July 8, 2010 (the effective date of his termination), Claimant rejected Employer's offer of a new contract that would have allowed Claimant to remain employed by Employer. In other words, Claimant, while employed, refused to accept an offer of continued employment. Again, this is akin to the claimants' refusal in Hospital Service Association to accept the employer's offer of continued work on a different shift. Thus, under the reasoning set forth in Hospital Service Association and its progeny (Delaney and Shrum), Claimant is deemed to have quit his position, because, while employed, he refused to accept an offer of continued employment. Claimant, therefore, is subject to Section 402(b) of the Law, "which denies compensation to a claimant who `voluntarily [leaves] work without cause of a necessitous and compelling nature.'"[11]Hospital Service Association, 476 A.2d at 518 (alteration in original). The Board committed an error of law to the extent that it relied upon Section 402(e) of the Law in awarding Claimant benefits.
Finally, we will address Employer's argument that that the Board committed an error of law when it concluded, in the alternative, that Claimant had cause of a necessitous and compelling nature for voluntarily terminating his employment. As noted above, Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. Wasko v. Unemployment Comp. Bd. of Review, 88 Pa.Cmwlth. 16, 488 A.2d 388, 389 (1985). A claimant who *228 voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision. Fitzgerald v. Unemployment Comp. Bd. of Review, 714 A.2d 1126 (Pa.Cmwlth. 1998), appeal denied, 568 Pa. 650, 794 A.2d 364 (1999). In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve her employment. Procito v. Unemployment Comp. Bd. of Review, 945 A.2d 261, 265 (Pa.Cmwlth.2008).
"[I]t is well-settled that an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate her employment." Brunswick Hotel and Conference Ctr., LLC v. Unemployment Comp. Bd. of Review, 906 A.2d 657, 660 (Pa. Cmwlth.2006). Whether a change is "so substantial as to warrant necessitous cause for terminating employment," must be determined based on the circumstances of each case. Id., 906 A.2d at 660. "[S]ubstantiality is measured by the impact on the employee, and whether the change involves any real `difference' in employment conditions." McCarthy v. Unemployment Comp. Bd. of Review, 829 A.2d 1266, 1272 (Pa.Cmwlth.2003). The reasons for the change in employment conditions are irrelevant, as "[i]t is not a defense for the employer to merely establish that it had good reasons for the unilateral change." Chavez (Token) v. Unemployment Comp. Bd. of Review, 738 A.2d 77, 82 (Pa.Cmwlth. 1999), appeal denied, 563 Pa. 704, 761 A.2d 551 (2000). "Whether an employee has a necessitous and compelling reason to voluntarily quit employment is a question of law fully reviewable by this Court." Brunswick Hotel, 906 A.2d at 660.
Claimant argues that this case is similar to Accu-Weather v. Unemployment Compensation Board of Review, 160 Pa.Cmwlth. 307, 634 A.2d 818, 820 (1993), wherein the employer eliminated a thirty-day notice clause which had been part of the employee's previous contract, knowing that the employee considered the clause to be crucial term, and presented the proposed change to the employee on a "take-it-or-leave-it" basis. Under those circumstances, this Court in Accu-Weather affirmed the Board's determination that the employee had "cause of a necessitous and compelling nature" to voluntarily terminate his employment and, therefore, was thus entitled to unemployment compensation benefits.
Here, the Board found that "[s]ubsequent to the nonrenewal, the employer attempted to negotiate a new contract with the claimant that eliminated the automatic renewal provision, eliminated the automatic pay raise, eliminated a $500.00 car allowance, required the claimant to contribute toward medical benefits and revised the severance package." (Board's opinion, F.F. no. 5.) Based upon this finding, the Board concluded, in the alternative, that Claimant had cause of a necessitous and compelling nature to quit his employment because Employer was attempting to make unilateral and substantial changes in the terms and conditions of Claimant's employment. (Board's opinion, p. 3.) We agree with Claimant that the changes Employer sought to impose on Claimant were even greater than the single change that the employer in Accu-Weather sought to impose. Thus, Claimant established necessitous *229 and compelling reasons for voluntarily terminating his employment.[12]
For the reasons set forth above, we affirm the Board's order on alternative grounds.

ORDER
AND NOW, this 21st day of March, 2012, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED on alternative grounds.
CONCURRING AND DISSENTING OPINION BY Judge McCULLOUGH.
While I concur in the result reached by the Majority that Raymond A. Stepnoski (Claimant) should be granted unemployment compensation benefits, I strongly disagree with the Majority's analysis. The Unemployment Compensation Board of Review (Board) correctly determined that Claimant is not ineligible under section 402(e) of the Unemployment Compensation Law (Law)[1] because he was terminated by Middletown Township (Employer). However, I respectfully must reject the Majority's analysis in granting benefits which is based upon dicta in the Board's discussion[2] that this case is a voluntary quit for cause of a necessitous and compelling nature under section 402(b) of the Law.[3]
The case is closely analogous to Mack Trucks, Inc. v. Unemployment Compensation Board of Review, 77 Pa.Cmwlth. 74, 465 A.2d 87 (1983). In Mack Trucks, Inc., the claimant worked for the employer as a branch account executive for four years and eight months under an annually renewable contract. In mid-June of 1981, the employer offered the claimant a new agreement effective July 1, 1981, which changed his compensation and would have placed him in a retail sales position. The claimant presented the employer with three addenda to the proposed agreement. The employer refused to discuss the proposed addenda and discharged the claimant on June 30, 1981. The service center, the referee, and the Board each determined that the claimant was not ineligible *230 for benefits under section 402(e) of the Law.
On appeal to this Court in Mack Trucks, Inc., the employer initially argued that the Board erred in applying section 402(e) of the Law rather than section 402(a).[4] In rejecting the employer's assertion, this Court stated the following, in pertinent part:
[E]mployer's urging of the applicability of Section 402(a) is mistaken inasmuch as that provision pertains exclusively to a claimant "who is already unemployed" and who "refuses a suitable job referral or offer without good cause." Here, the Claimant became unemployed after his futile attempt to modify the new contract and subsequent discharge. Claimant was employed, when he allegedly refused to accept the new retail sales position under the agreement,[4] and was then terminated. Employer's argument concerning the applicability of Section 402(a) must fail.
* * *
4. Employer's argument disregards the Board's findings and assumes that Claimant actually refused to sign the new employment contract, as drafted, and was discharged. The Board's findings provide pertinently only that Claimant was peremptorily fired after submitting the addenda for Employer's consideration. There were no specific findings establishing that Claimant refused to accept the new agreement as drafted and was therefore terminated.
Mack Trucks, Inc., 465 A.2d at 88 (citations omitted and emphasis in original).
The employer then argued that the Board's decision did not contain sufficient findings of fact pertinent to the suitability of the offered retail sales position and whether the claimant had "good cause" to refuse the offered position. In rejecting this contention, we stated:
[A]n adjudication, however, must include all findings necessary to resolve the issues raised by the evidence which are relevant to the decision. Because the findings, if made, would support an eligibility determination under Section 402(a), such findings would be inconsistent with, would not support and would be irrelevant to the Board's conclusion of law deeming Claimant not ineligible under Section 402(e). Thus, Employer's argument is without merit.
Id. (citations omitted and emphasis in original).
In the instant case, the Board made the following findings of fact:
1. The claimant was last employed as the township manager by Middletown Township for two years and his last day of work was July 8, 2010.
2. The claimant was employed under an employment agreement that provided for automatic renewal each year on July 9 unless the Township Board of Supervisors (employer) gave the claimant 30 days' notice that it was not renewing his contract.
3. On June 7, 2010, the employer voted to not renew the claimant's contract.
4. On June 8, 2010, the employer sent the claimant a letter stating that it was not renewing his contract.
5. Subsequent to the nonrenewal, the employer attempted to negotiate a new contract with the claimant that eliminated the automatic renewal provision, eliminated the automatic pay raise, eliminated a $500.00 car allowance, required *231 the claimant to contribute toward medical benefits and revised the severance package.
6. The claimant provided the employer with a counteroffer, which the employer rejected.
7. The claimant fulfilled his obligations under the existing contract by working until through [sic] July 8, 2010.
8. The employer terminated the claimant's employment when it voted not to renew his contract.
(Board Decision and Order at 1-2.)
Based upon the foregoing explicit findings of fact, the opinion of this Court in Mack Trucks, Inc. controls the disposition of this appeal[5] and the Board properly considered Claimant's eligibility for benefits under section 402(e) of the Law. Like the claimant in Mack Trucks, Inc., in this case Claimant's employment was terminated by his employer prior to his accepting or rejecting a new contract. It is true that the termination in this case occurred before Employer and Claimant started the negotiations of the new contract, whereas in Mack Trucks, Inc., the termination came during the negotiations. Nevertheless, as in Mack Trucks, Inc., the Board in this case did not find that Claimant refused to accept Employer's new contract offer; rather, the Board found that Employer made an offer and Claimant made a counteroffer that Employer rejected. (Board Decision and Order at 1.)
Section 39(1) of the Restatement of Contracts (1981) defines "counter-offer" as "[a]n offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substitute bargain differing from that proposed by the original offer." Restatement (Second) of Contracts § 39(1) (1981). Comment a to Section 39 states:

a. Counter-offer as rejection. It is often said that a counter-offer is a rejection, and it does have the same effect in terminating the offeree's power of acceptance. But in other respects a counter-offer differs from a rejection. A counter-offer must be capable of being accepted; it carries negotiations on rather than breaking them off. The termination of the power of acceptance by a counter-offer merely carries out the usual understanding of bargainers that one proposal is dropped when another is taken under consideration; if alternative proposals are to be under consideration at the same time, warning in expected.
Restatement (Second) of Contracts § 39 cmt. a (1981). See also Restatement (Second) of Contracts § 36(a)(1) (1981) ("An offeree's power of acceptance may be terminated by ... [r]ejection or counter-offer by the offeree....").[6] Thus, a counter-offer terminates the original offer. First Home Savings Bank, FSB v. Nernberg, 436 Pa.Super. 377, 648 A.2d 9, 15 (1994), appeal denied, 540 Pa. 620, 657 A.2d 491 (1995) citing Ingrassia Construction Company, *232 Inc. v. Walsh, 337 Pa.Super. 58, 486 A.2d 478 (1984).
Nevertheless, in Mack Trucks, Inc., this Court did not find that the claimant's proposed addenda to the employer's offer constituted a rejection of that offer as a matter of law in the absence of a Board finding in this regard. See Id., 465 A.2d at 88 n. 4 ("Employer's argument disregards the Board's findings and assumes that Claimant actually refused to sign the new employment contract, as drafted, and was discharged. The Board's findings provide pertinently only that Claimant was peremptorily fired after submitting the addenda for Employer's consideration. There were no specific findings establishing that Claimant refused to accept the new agreement as drafted and was therefore terminated.") (emphasis in original).
Like the Majority, I agree with Claimant that there is substantial record evidence supporting the Board's finding that "`[a]fter the claimant's contract was terminated, the employer attempted to negotiate a new contract'" and "`[t]he employer terminated the claimant's employment when it voted not to renew his contract.'" (Majority Opinion at 224 quoting Findings of Fact Nos. 3 and 8.) Thus, the Board found that Employer's offer and Claimant's counter-offer occurred after Employer had already terminated Claimant's employment without any willful misconduct on Claimant's part.[7]
Because the Board made all of the findings necessary to resolve the issue of Claimant's eligibility under section 402(e), and because the termination of his employment predates any offer of continued employment, any findings regarding the suitability of the new contract offer or whether Claimant had good cause to refuse the new offer "[w]ould be inconsistent with, would not support, and would be irrelevant to the Board's conclusion of law deeming Claimant not ineligible under Section 402(e)...." Mack Trucks, Inc., 465 A.2d at 88. To the extent that the majority's opinion overrules Mack Trucks, Inc. in this regard, this case should be considered and disposed of by this Court en banc. See Internal Operating Procedures of the Commonwealth Court § 257, 210 Pa.Code § 67.30 ("Pursuant to the circulation of a draft opinion accompanied by a notation in accordance with § 67.25 (relating to decisions; circulation of draft opinions) that the proposed panel decision would overrule a previous panel decision, if a majority of the court agrees that such an overruling would result, the president judge shall list the matter on the agenda of the next judicial conference for consideration as to reargument.").
Moreover, even if we were to consider this case under section 402(b) of the Law, I would conclude that Claimant is ineligible for benefits because he did not have necessitous and compelling cause for rejecting suitable employment. Mere dissatisfaction with wages is insufficient to establish the requisite necessitous and compelling justification for terminating one's employment. A-Positive Electric v. Unemployment Compensation Board of Review, 654 A.2d 299, 302 (Pa.Cmwlth. 1995). However, a substantial unilateral change in the terms and conditions of a claimant's employment may constitute cause of a necessitous and compelling nature *233 to justify voluntarily leaving employment. Id.
Thus, a substantial reduction in compensation can constitute the necessitous and compelling cause for terminating employment. Griffith Chevrolet-Olds, Inc. v. Unemployment Compensation Board of Review, 142 Pa.Cmwlth. 242, 597 A.2d 215, 218 (1991). There is no talismanic percentage that constitutes a substantial reduction in wages and each case must be measured by its own circumstances. Id. As this Court explained:
The Board ... found that the elimination of Claimant's bonus would have resulted in a 12% reduction in her monthly income, and determined that this figure represented a substantial reduction in wages. We note, however, that what was being reduced was not Claimant's actual wages but rather her entitlement to extra compensation, depending on the company's profitability, in the form of monthly bonuses. As Employer points out, the impact of the elimination of the bonus on this claimant, whose wages at the rate of $500.00 per week would have remained the same, does not rise to the level of the impact of the wage reductions in Edwards v. Unemployment Compensation Board of Review, [35 Pa. Cmwlth. 647, 387 A.2d 510 (Pa.Cmwlth. 1978)] (custodian was faced with a 50% reduction in wages, from $170.00 to $85.00 per week) or in Morysville Body Works, Inc. v. Unemployment Compensation Board of Review, [59 Pa.Cmwlth. 486, 430 A.2d 376 (Pa.Cmwlth.1981)] (secretary-bookkeeper was required to accept a 25% reduction in her salary, from $290.00 to $215.00 per week).3
* * *
3. No cases have been found awarding unemployment compensation benefits unless there was at least a 20% reduction in wages. In Ship Inn, [Inc. v. Unemployment Compensation Board of Review, 50 Pa.Cmwlth. 292, 412 A.2d 913 (Pa.Cmwlth.1980),] this Court held that a waitress' 22% reduction in wages due to the elimination of an extra $15.00 per week for duties perform as head waitress was a substantial reduction, and in National Freight, Inc. v. Unemployment Compensation Board of Review, [34 Pa.Cmwlth. 161, 382 A.2d 1288 (Pa.Cmwlth.1978)], this Court determined that a truck driver's 22.86% reduction in retainage of gross receipts was also a substantial reduction in income. Cf. Pacini v. Unemployment Compensation Board of Review, [102 Pa.Cmwlth. 355, 518 A.2d 606 (Pa. Cmwlth. 1986)] (a clerk's 3.1% pay cut was not sufficient to establish a necessitous and compelling cause); Mignacca v. Unemployment Compensation Board of Review, [71 Pa.Cmwlth. 43, 453 A.2d 1087 (Pa.Cmwlth.1983)] (a sewing machine operator's 16.67% difference in pay between her old job and her new job was not a substantial reduction). Believing that each case must be considered on its own facts, however, we do not intend our observation to become the test for determining what constitutes a substantial reduction in wages.
Id. See also A-Positive Electric, 654 A.2d at 302-3 ("[E]mployer's failure to carry out its part in the agreement resulted in a substantial, unilateral change in conditions of claimant's employment. Employer's failure to fulfill the new employment agreement resulted in claimant not receiving her increased wages or payment for child care expenses, totaling a difference of $125.00 per week, or a 33.8% `reduction' in her wages. The board appropriately concluded that claimant's reduction in pay was sufficient to constitute necessitous and compelling cause....") (footnote omitted).
*234 As noted above, the Board found that the new employment contract that Employer offered Claimant "[e]liminated the automatic renewal provision, eliminated the automatic pay raise, eliminated a $500.00 car allowance, [and] required the claimant to contribute toward medical benefits and revised the severance package." (Finding of Fact No. 5.) There are no Board findings demonstrating that these changes to the renewal of future contracts and Claimant's compensation and benefits constitute the requisite necessitous and compelling cause under section 402(b) of the Law. See, e.g., Griffith Chevrolet-Olds, Inc., 597 A.2d at 218 (holding that a 12% reduction in monthly income does not constitute necessitous and compelling cause for a claimant to voluntarily terminate her employment.); Pacini, 518 A.2d at 608 (holding that a 3.1% pay cut is not a substantial figure sufficient to establish necessitous and compelling cause for terminating employment.).[8]
A case cited by the Majority, Shrum v. Unemployment Compensation Board of Review, 690 A.2d 796 (Pa.Cmwlth.1997), supports the denial of benefits in this case under section 402(b). In Shrum, the claimant worked under a confidentiality agreement with her employer as a technical writer. After the employer was acquired by a new company, the new employer required the claimant to sign, on a take-it-or-leave-it basis, a new confidentiality agreement and other forms. The claimant refused to sign the new agreement arguing that the new agreement significantly changed the terms and conditions of her employment and she was discharged when she refused to resign her position. The referee determined that the claimant was eligible for benefits under section 402(e) of the Law; the Board reversed, finding that the claimant was ineligible under section 402(b). Shrum, 690 A.2d at 798-99.
On appeal, this Court affirmed, noting:
The [new] Agreement that Claimant was required to sign was not a substantial unilateral change in the conditions of her employment that would have placed real and substantial pressures on a reasonable person in her circumstances to quit. The Agreement did not change Claimant's rate of pay, nor did it change her job responsibilities. In fact, the Agreement did not propose much of a change at all. Both the Agreement and the [old agreement with her former employer] restricted confidential employer information, and required information *235 about future employment in order to enforce the agreement. The only difference seems to be that the [new] Agreement was more restrictive in barring the use or taking of any information from [the new employer]. Arguably, these changes affect Claimant's employment with a future, unknown employer rather than the terms and conditions of her employment with [the old or new employers].
Shrum, 690 A.2d at 800-1.
Likewise, in this case, there are no Board findings that the new contract would affect Claimant's rate of pay or job responsibilities. Moreover, there are no findings that the changes to Claimant's car allowance, contributions to his medical benefits, or that the revised severance package would have any significant economic impact. Any speculative concern of Claimant that these changes might have an adverse effect in the future is not cause of a necessitous and compelling nature to support the award of benefits under section 402(b). Shrum, 690 A.2d at 801.
Finally, our opinion in Accu-Weather, Inc. v. Unemployment Compensation Board of Review, 160 Pa.Cmwlth. 307, 634 A.2d 818 (1993) does not compel a different result. In that case, "[E]mployer knew that Claimant considered the thirty-day clause to be a crucial term and condition of employment ...", and "[t]he proposed contract... stated that [Claimant] was to perform the more difficult job of graphic satellite coordinator for less pay...." Id., 634 A.2d at 821. Again, in this case, there are no Board findings that the changes in the new contract related to "a crucial term" or that Claimant would be required to perform more or more difficult duties for less pay.
Accordingly, unlike the Majority, I would affirm the Board's order on the basis that Claimant is not ineligible for benefits under section 402(e) of the Law because Claimant did not quit and would not have had a necessitous and compelling cause to do so if he had under section 402(b) of the Law.
NOTES
[1] This case was assigned to the opinion writer on or before January 6, 2012, when President Judge Leadbetter completed her term as President Judge.
[2] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b). Section 402(b) of the Law provides, in pertinent part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature."
[3] The employment agreement between Employer and Claimant provided for automatic renewal each year, effective July 9th. (R.R., Item No. 5a, at p. 2.) It also provided, in relevant part, as follows: "In the event Employee is terminated by the Employer, the Employer agrees to give Employee written notice of termination at least thirty (30) days in advance of the termination date." (Id. at 2.) "For the purpose of determining when severance pay is due, termination shall occur when ... Employer, by a majority of the governing body, votes to terminate the Employee at a duly authorized public meeting." (Id. at 2-3).
[4] Employer's letter, dated June 8, 2010, provided, in part:

As I believe you are aware, at the regularly scheduled meeting of the Board of Supervisors... last evening, June 7, 2010, a majority of the members of the Board of Supervisors voted to terminate your Employment Agreement at the end of its current term and prior to its automatic renewal on July 9, 2010. Accordingly, please allow this letter to serve as your thirty (30) days prior written notice of termination consistent with the terms of your Employment Agreement.
(C.R., Item no. 13, Ex. C-1.)
[5] Employer's counsel's letter, dated July 7, 2010, provided, as follows:

When we met approximately two (2) weeks ago, I advised you that the Board of Supervisors' offer of a new Employment Agreement centered on the following:
 Elimination of the automatic renewal provision that existed in the expiring Employment Agreement;
 Elimination of the automatic raise provisions that existed in the expiring Employment Agreement;
 Elimination of contract language requiring that the Township Manager be highest paid township employee, as well as elimination of language connecting the Township Manager's salary with the salary of the Township Police Chief;
 Elimination of the $500 Township Manager car allowance;
 Employee contribution to health care benefits;
 Revision of the existing severance package, namely pertaining to health care benefits, as it existed in the expiring Employment Agreement.
(R.R., Item No. 8a, at p. 1.) The letter also summarized Claimant's counter-offer to the Board of Supervisors', which Claimant made approximately one (1) week prior to the date of the letter. (Id. at pp. 1-2.)
[6] Claimant also presented the testimony of Robert McMonagle, one of the members of the Board of Supervisors of Middletown Township. Employer presented the testimony of its counsel, Mr. Hunt, and Ann Everk, Employer's personnel administrative assistant. Their testimony did not contradict Claimant's relevant testimony, as summarized herein.
[7] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e). Section 402(e) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to "willful misconduct in connection with his work."
[8] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.
[9] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. §§ 802(a) and 802(a)(1). Sections 402(a) and 402(a)(1) of the Law provide, in pertinent part, as follows:

Ineligibility for compensation
An employe shall be ineligible for compensation for any week
(a) In which his unemployment is due to failure, without good cause, either to apply for suitable work ... or to accept suitable work when offered to him ... by any employer....
(a)(1) In which his unemployment is due to failure to accept an offer of suitable full-time work in order to pursue seasonal or part-time employment.
[10] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(h). Section 402(h) of the Law provides, in part, that an employee is ineligible for compensation for any week "[i]n which he is engaged in self-employment."
[11] The Board attempted to distinguish the case now before us from this Court's earlier opinion in Delaney. The Board reasoned that in the case now before us, Employer terminated Claimant's employment when it voted on June 7, 2010, to terminate his employment contract. The Board compared the present circumstances to those in Delaney, where there was no indication that the claimant in Delaney "had an employment contract that was terminated by the employer." (Board's opinion, p. 2.) The Board focused on the fact that "prior to attempting to negotiate with the claimant, the employer took action and terminated the claimant." (Id.) The Board, however, failed to appreciate that, although the Board of Supervisors voted on June 7, 2010, to terminate or not renew Claimant's contract, Claimant's termination was not effective until July 9, 2010, the date that his employment agreement expired (which was also thirty-one days after the letter giving Claimant the thirty-day notice of the impending termination of his employment, as required by his employment contract). Thus, Claimant remained employed during the time period during which Employer's counsel attempted to negotiate a new employment contract. Moreover, the analysis set forth in Delaney originated in Hospital Service Association, a case where the claimants were employed by the employer, were notified that their employment would be terminated at a date in the future, and refused to accept offers of continued employment on a different shift, which offers of continued employment were extended during the time period between notification of impending termination and the final day of employment. The Board's attempt to distinguish Delaney as discussed above, therefore, is unpersuasive.
[12] We reject Employer's argument that Claimant failed to establish necessitous and compelling reasons for voluntarily terminating his employment when he failed to make a "reasonable" counter-offer to Employer's offer of continued employment. In the case at hand, Employer unilaterally chose to terminate Claimant's employment. Employer then presented Claimant with an offer of continued employment, which contained unilateral and substantial changes in the terms of employment. Through this argument, Employer appears to suggest that although it did not provide Claimant with an offer of continued employment that Claimant should have been reasonably expected to accept, because the offer of continued employment contained unilateral and substantial changes to the employment relationship, Claimant should be denied benefits if he does not respond with a reasonable counter-offer to Employer's offer. There simply is no support for such a position.
[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected to his work.
[2] The portion of the Board's discussion relied upon by the Majority states:

Moreover, the Board notes that even if this was to be considered a voluntary quit, the claimant would have had cause of a necessitous and compelling nature to quit his employment as the employer was attempting to make unilateral and substantial changes in the terms and conditions of the claimant's employment.
(Board Decision and Order at 3.)
[3] 43 P.S. § 802(b). Pursuant to section 402(b) of the Law, an employee who voluntarily terminates his employment without a necessitous and compelling reason is ineligible for benefits.
[4] 43 P.S. § 802(a). Section 402(a) of the Law provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his failure, without good cause, to either apply for or accept suitable work offered to him by an employer.
[5] See Pries v. Workers' Compensation Appeal Board (Verizon Pennsylvania), 903 A.2d 136, 144 (Pa.Cmwlth.2006), appeal denied, 592 Pa. 762, 923 A.2d 412 (2007) ("`The rule of stare decisis declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different.' Under stare decisis, we are bound to follow the decisions of our Court unless overruled by the Supreme Court or where other compelling reasons can be demonstrated....") (citations omitted).
[6] But cf. Section 61 of the Restatement (Second) of Contracts (1981) ("An acceptance which requests a change or addition to the terms of the offer is not thereby invalidated unless the acceptance is made to depend on an assent to the changed or added terms.").
[7] Though not specifically mentioned by the Board in its Findings of Fact, it is noted that Employer volunteered at the referee's hearing that it had paid $59,569.90 to Claimant as severance pursuant to the Employment Agreement. (See R.R. at 7a, p. 26.) Claimant was only entitled to such severance in the event his employment was terminated by Employer and he did not quit. (See section 3, paragraphs B. and F. of the Employment Agreement, R.R. at 5a, pp. 3, 4.)
[8] But cf. Brunswick Hotel & Conference Center v. Unemployment Compensation Board of Review, 906 A.2d 657, 662 (Pa.Cmwlth.2006) ("[C]laimant's loss of health benefits was a significant change in the terms of her employment. Unlike in Steinberg [Vision Associates v. Unemployment Compensation Board of Review, 154 Pa.Cmwlth. 486, 624 A.2d 237 (Pa.Cmwlth. 1993)], where the claimant could have purchased health insurance coverage at an additional cost, in this case there was no option for Claimant to purchase health insurance. If a substantial increase in the cost for health insurance can be a sufficient unilateral change in the terms and conditions of employment so as to be a necessitous and compelling reason to quit, so can the total elimination of health insurance previously provided.") (footnote omitted); Steinberg Vision Associates, 624 A.2d 237, at 240 ("While on the surface a 14.2% wage reduction is at the cusp of what is considered to be a substantial impact, the loss represented here means more than the measurable dollar value to the Claimant. The record demonstrates that the intrinsic value of th[e discontinued reimbursement for health insurance] benefit to the Claimant more than doubled over the course of her employment. Given this trend, the actual loss represented to the Claimant by the Employer's discontinuation of reimbursement goes beyond the 14.2% wage reduction which would immediately result, and must be considered unreasonable.") (footnote omitted).