# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald J. Wyar,           :
                                      :
             Petitioner         :
                                      :
            v.                 : No. 865 C.D. 2015
                                      : Submitted: December 4, 2015
Unemployment Compensation     :
Board of Review,                 :
                                      :
            Respondent      :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                  **FILED: March 18, 2016**

       Donald J. Wyar (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) finding him ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law)[2] because he voluntarily quit his job without a necessitous and compelling reason. We affirm.

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides, in relevant part, that a claimant "shall be ineligible for compensation for **(Footnote continued on next page…)**

Claimant was employed as a full-time police officer with Portage Borough (Employer or Borough) beginning December 2006, with his last day of work of July 29, 2014. (Record (R.) Item 16, Board Decision and Order, Finding of Fact (F.F.) ¶1.) Claimant filed his claim for unemployment compensation benefits on August 13, 2014; in response, Employer submitted to the Department of Labor and Industry a September 18, 2014 letter from Claimant to Employer, in which Claimant stated that he was resigning his position as a police officer with Employer effective August 29, 2014. (R. Item 1, Claim Record; R. Item 4, Employer Separation Information.)

On October 17, 2014, the Unemployment Compensation Service Center (Service Center) issued a notice of determination finding Claimant ineligible for benefits beginning with the week ending September 20, 2014 pursuant to Section 402(b) of the Law because Claimant voluntarily terminated his employment with Employer without a necessitous and compelling reason. (R. Item 6, Notice of Determination.) In addition, the Service Center issued two other notices, which (i) established a fault overpayment of $925 pursuant to Section 804(a) of the Law, 43 P.S. § 874(a); (ii) assessed a penalty equivalent to 15% of the overpayment of benefits in the amount of $138.75 pursuant to Section 801(c) of the Law, 43 P.S. § 871(c); and (iii) imposed 5 penalty weeks under Section 801(b) of the Law, 43 P.S. § 871(b). (R. Item 6, Notice of Determination of Overpayment of Benefit, Notice of Penalty Determination.)

_____

(continued…)

any week...[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." *Id.*

2

Claimant appealed, and on November 26, 2014, a hearing was held before the Referee at which Claimant testified that he was suspended without pay on July 29, 2014 and was informed that he had been terminated on August 26, 2014 by his attorney, Dave Byer. (R. Item 10, Nov. 26, 2014 Hearing Transcript (H.T.) at 6, 11.) Claimant testified that he confirmed that he had been discharged in a text message conversation with Edward Miller, the Chief of Police for the Borough and Claimant's supervisor, which took place on August 26 and 27, 2014.[3] (*Id*. at 7-8; R. Item 10, Claimant Ex. 1: Text Messages.) However, Claimant stated that Robert Koban, the Borough Manager, was responsible for discipline, suspension and termination decisions related to Borough police officers and that he never received confirmation of his discharge from the Borough Manager, the Borough Council or anyone else at Employer. (H.T. at 8, 11.) Claimant testified that he entered into a separation agreement with Employer on or about September 18, 2014, in which he released Employer from any liability related to his termination claim under the Police Tenure Act[4] in exchange for a severance package; as part of this settlement, he signed the September 18, 2014 letter indicating that he was resigning his position as a police officer effective August 29,

---

[3] On August 26, 2014, Claimant texted Chief Miller: "I would have expected to hear I was terminated by you not the way I found out." Chief Miller responded on August 27, 2014:

> First i had no idea what u were talkin about and didnt find out til latn last night iwas never informed otherwise i would i would have bin 1 to break news [sic]

(R. Item 10, Claimant Ex. 1: Text Messages.)

[4] Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §§ 811–816.

2014.[5]  (*Id*. at 8-10; R. Item 4, Separation Information: Sept. 18, 2014 Letter; R. Item 10, Claimant Ex. 2: Separation Agreement and General Release.)

Employer presented the testimony of Chief Miller and the Borough Manager.  Chief Miller testified that he ordered Claimant during a July 23, 2014 telephone call to provide a written response to a citizen's complaint of rude behavior by Claimant from July 18, 2014, and Claimant refused to do so in violation of Employer policy.  (H.T. at 18-20.)  Chief Miller testified that Claimant did provide a written response to the complaint the next day; however, during a meeting with Claimant and the Borough Manager on July 29, 2014, Claimant refused to answer any questions regarding the incident in violation of a direct order from Chief Miller.  (*Id*. at 20-21, 24-29.)  Chief Miller stated that the Borough Manager then advised Claimant that he was suspended until further notice and following the meeting Claimant became irate and made repeated threatening statements that the Pennsylvania State Police should be put on standby because "it's happening now" and that a certain resident of the Borough should "watch his back."  (*Id*. at 21-22, 29, 31.)  Chief Miller stated that Claimant was given a formal notice of potential disciplinary action or discharge on August 18, 2014 related to the incident associated with the citizen's complaint and Claimant's refusal to provide a written response to the complaint.   (*Id*. at 17, 31; R. Item 10, Employer Ex. 3: Notice.)  Chief Miller testified that he did have a text message exchange with Claimant on August 26 and 27, 2014, but that he had no knowledge as of that date that Claimant had been terminated; Chief Miller stated that he asked the

---

[5] The separation agreement additionally provided that Claimant did not waive his right to bring an unemployment compensation claim and that Employer did not waive any objection or defense to a claim by Claimant for unemployment compensation benefits.  (R. Item 10, Claimant Ex. 2: Separation Agreement and General Release ¶3.)

4

Borough Manager about Claimant's text message and was informed only that an attorney for Employer was involved in discussions with Claimant's attorney, Mr. Byer. (H.T. at 22, 29-30.)

The Borough Manager testified that he did not terminate Claimant at any time following the suspension on July 29, 2014 through Claimant's resignation and execution of the separation agreement on September 18, 2014 and that he had never spoken to Mr. Byer. (*Id*. at 33, 38.) The Borough Manager testified that Claimant's employment was discussed during an executive session at a September 2, 2014 Borough Council meeting and that Claimant was given notice on September 5, 2014 that a record of the incidents would be placed in his employment file. (*Id*. at 33-34.) The Borough Manager further testified that he had taken out an advertisement in the September 18, 2014 issue of the *Portage Dispatch* newspaper for a full-time police officer because at that time the Borough's police force lacked a full-time officer as a result of Claimant's suspension. (*Id*. at 36-39; R. Item 10, Claimant Ex. 3: Advertisement.) The Borough Manager stated that, while he did have a conversation with Chief Miller about his text message exchange with Claimant, the Borough Manager was not aware that Claimant had informed Chief Miller that he understood that he had been terminated. (H.T. at 38.)

Following the hearing, the Referee issued a decision and order on December 4, 2014, concluding that Claimant voluntarily left his employment with Employer and that he had not proven cause of a necessitous and compelling nature for doing so. (R. Item 11, Referee Decision and Order, Reasoning at 3.) However, the Referee determined that there was insufficient evidence to show that the overpayment of benefits was the result of any fault or fraud on behalf of Claimant

5

and therefore modified the notices of determination issued by the Service Center to establish a non-fault overpayment pursuant to Section 804(b) of the Law, 43 P.S. § 874(b), and to cancel the penalty weeks and penalty payment. (*Id*.)

Claimant appealed, and the Board affirmed the determination of the Referee. The Board found that Claimant had been suspended without pay and notified that a formal reprimand was forthcoming but that he resigned on September 18, 2014 prior to the receipt of formal discipline from Employer. (R. Item 16, Board Decision and Order, F.F. ¶¶8, 10-13, Discussion at 3.) The Board noted that an employee who resigns to avoid an imminent discharge, as opposed to the mere possibility of dismissal, will be treated as having been fired and eligible for unemployment benefits subject to eligibility under Section 402(e) of the Law, 43 P.S. § 802(e), and other relevant provisions; however, the Board concluded that here Claimant did not face the threat of an imminent discharge when he signed the separation agreement and submitted his resignation letter on September 18, 2014. (R. Item 16, Board Decision and Order, Discussion at 3.) The Board further determined that Claimant had not shown that he had cause of a necessitous and compelling nature for resigning his employment, and the Board affirmed the Referee's determination that Claimant was subject to a non-fault overpayment of $925 and that penalty weeks and a penalty payment were unwarranted in this case. (*Id*., Discussion at 3-4, Conclusion of Law.) Claimant thereafter petitioned this Court for review of the Board's order.[6]

---

[6] Our scope of review of the Board's decision is limited to determining whether errors of law were committed, constitutional rights or agency procedures were violated, and necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1261 n.5 (Pa. Cmwlth. 2015).

Whether a claimant's separation from employment constitutes a voluntary resignation or a discharge is a question of law subject to this Court's plenary review and will be determined from the totality of the facts surrounding the separation. *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015); *Middletown Township v. Unemployment Compensation Board of Review,* 40 A.3d 217, 224 (Pa. Cmwlth. 2012). The claimant bears the burden of demonstrating that the separation was a discharge. *Middletown Township*, 40 A.3d at 224; *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review,* 648 A.2d 124, 126 (Pa. Cmwlth. 1994). If a claimant shows that he was discharged, then the employer has the burden to prove that the claimant engaged in willful misconduct; however, where the claimant cannot show that he was discharged, then the claimant must prove necessitous and compelling reasons for voluntarily separating from employment in order to obtain unemployment benefits. *Middletown Township*, 40 A.3d at 224.

A claimant who resigns to avoid an imminent discharge will be considered as having been discharged by the employer. *Fishel v. Unemployment Compensation Board of Review*, 674 A.2d 770, 773 n.2 (Pa. Cmwlth. 1996) (*en banc*); *Pennsylvania Liquor Control Board,* 648 A.2d at 126. On the other hand, a claimant who resigns only to avoid the possibility of being fired is deemed to have voluntarily quit. *Fishel*, 674 A.2d at 772-73; *Pennsylvania Liquor Control Board,* 648 A.2d at 126. "The degree of certainty in an employer's language resulting in a [separation] has often been the difference between those cases in which the Courts have found that an employee's [separation] was voluntary and those in which the employer's...act was deemed to effect the [separation]." *Fishel*, 674 A.2d at 772 (quoting *Sweigart v. Unemployment Compensation Board of Review,* 408 A.2d

7

561, 563 (Pa. Cmwlth. 1979)). Thus, this Court has held that language from the employer suggesting that a claimant may be discharged following an investigation or that the claimant faces termination if her performance does not improve lacks the immediacy necessary to show a discharge under the Law. *See Scott v. Unemployment Compensation Board of Review*, 437 A.2d 1304, 1305 (Pa. Cmwlth. 1981) (holding that a bus driver who resigned after being warned by her employer of possible dismissal if her account of an automobile investigation proved untrue had voluntarily quit); *Rizzitano v. Unemployment Compensation Board of Review*, 377 A.2d 1060, 1061 (Pa. Cmwlth. 1977) (holding that mechanic who was advised by his employer that he would be replaced if he did not increase his work output had voluntarily quit). Similarly, a recommendation of termination by a supervisor has been held to not constitute an imminent threat of discharge where the recommendation had not been approved by the party responsible for employment decisions. *See Fishel*, 674 A.2d at 772-73 (holding that teacher who resigned after being told by her principal that he would recommend termination to the school board but prior to a hearing before the board and the board's vote had voluntarily quit); *Goffi v. Unemployment Compensation Board of Review*, 427 A.2d 1273, 1274-75 (Pa. Cmwlth. 1981) (holding that professor who resigned after being told by the dean of the college that he would recommend the professor's termination but prior to a definitive determination of the professor's status by the board of trustees had voluntarily quit).

Upon review, we affirm the Board's determination that Claimant voluntarily resigned from his position as a police officer with Employer. Evidence of record reflects that Employer notified Claimant on September 5, 2014 that he would face potential discipline for his failure to follow the orders of his supervisor

8

in July 2014. However, Claimant did not wait for the resolution of the disciplinary process but instead submitted a resignation letter and signed a separation agreement that provided for a severance package in exchange for his general release of all claims against Employer except for his claim for unemployment compensation benefits. There was no evidence presented that Employer had ever made a final determination to terminate Claimant and Claimant admitted that no one at Employer formally notified him that he had been terminated. This evidence supports the Board's conclusion that Claimant faced only the possibility of dismissal rather than an imminent dismissal when he submitted his resignation letter. The fact that Claimant entered into a separation agreement does not change our analysis; there is no indication in the agreement and there was no testimony presented to the Board that Claimant entered into the separation agreement under the threat of or to avoid imminent discharge. *See Rosenberg v. Unemployment Compensation Board of Review*, 560 A.2d 292, 293-94 (Pa. Cmwlth. 1989) (holding that professor's negotiation of separation agreement with college that included severance payment and a release of a potential tort claim by the professor against the college was evidence of the voluntariness of the professor's separation); *Gauntlett-Kirby v. Unemployment Compensation Board of Review*, (Pa. Cmwlth. No. 340 C.D. 2014, filed November 10, 2014), slip op. at 2-4, 8-9, 2014 WL 10298880 at *1, *4 (holding that claimant who entered into a separation agreement after being told by human resources that she "probably will be fired" voluntarily quit where she did not face the clear-cut choice of signing the agreement or being fired and the agreement did not contain a statement that it was entered into in lieu of claimant's discharge).

9

Claimant argues that the Board failed to consider the totality of the circumstances regarding Claimant's separation from Employer and that Claimant had not resigned, but in fact had been terminated by Employer. Specifically, Claimant contends that the Board failed to consider the text message conversation between Claimant and Chief Miller on August 26 and 27, 2014 and the advertisement placed in the September 18, 2014 edition of the *Portage Dispatch*, which would necessarily have to have been ordered prior to Claimant's execution of the resignation letter and separation agreement.

However, contrary to Claimant's arguments, the Board specifically considered Claimant's evidence regarding the text message exchange with Chief Miller and rejected Claimant's account that Chief Miller informed him that he had been terminated as not credible. (R. Item 16, Board Decision and Order, Discussion at 3 ("While the claimant testified that he was discharged on August 26, 2014, the Board does not find the claimant's testimony to be credible.").) The Board is the ultimate arbiter of questions of witness credibility and evidentiary weight and therefore the Board's determination that Claimant's testimony that he learned he was terminated on August 26, 2014 was not credible may not be disturbed on appeal. *Peak v. Unemployment Compensation Board of Review,* 501 A.2d 1383, 1385, 1388 (Pa. 1985); *Collier Stone Co. v. Unemployment Compensation Board of Review,* 876 A.2d 481, 483 (Pa. Cmwlth. 2005). Furthermore, the Board rejected Claimant's argument that Employer's decision to advertise for Claimant's position prior to receipt of his resignation letter showed that Claimant had in fact been terminated. As the Board explained:

> While the claimant's counsel argues that discharge was imminent because the employer advertised for a full-time police officer position on September 18, 2014, the Board rejects this argument. Rather, the Board concludes that

10

> the employer was aware that the claimant was quitting and planned to accept his severance. As the claimant was under no threat of discharge at the time he quit, and the claimant only faced a mere chance of discharge, the Board rules under Section 402(b) of the Law accordingly.

(R. Item 16, Board Decision and Order, Discussion at 3.)

Accordingly, we conclude that Claimant voluntarily separated from Employer. Claimant has not argued that he had cause of a necessitous and compelling nature for his separation and therefore the order of the Board finding that Claimant was ineligible for unemployment compensation benefits under Section 402(b) is affirmed.

**JAMES GARDNER COLINS, Senior Judge**

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald J. Wyar,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             : No. 865 C.D. 2015
                                         :
Unemployment Compensation                :
Board of Review,                         :
                                         :
                    Respondent           :

# ORDER

AND NOW, this 18th day of March, 2016, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**