**David Jeffrey WHITLATCH, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 2012.

Decided Feb. 21, 2013.

order is not determinative as to where the transaction occurred.

David J. Whitlatch, pro se.

Erin B. Lokhandwala, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

■ David Jeffrey Whitlatch (Claimant) petitions, *pro se*, for review of the decision and order of the Unemployment Compensation Board of Review (Board), holding that he was ineligible to receive benefits under Section 402(b) of the Unemployment Compensation Law,[1] because he did not have a necessitous and compelling reason for voluntarily quitting his job. The Board reversed the decision of the Referee and issued its own findings of fact.[2] We affirm the Board's decision denying benefits, but not for the reasons set forth by the Board.

Claimant was last employed by Paul Davis Restoration of Western Pennsylvania (Employer) as an estimator/project manager from October 2007 until January 9, 2012. (Board Opinion, Findings of Fact (F.F.) ¶ 1.) Claimant initially was paid solely based on sales commission, and he had the ability to earn ten percent of sales that he made. (F.F.¶ 2.) On December 5, 2011, Employer announced that it would be changing its pay structure effective the start of the new year, and under that new structure Claimant would receive a guaranteed salary of $385 per week and a five percent sales commission. (F.F.¶¶ 3–4.) Claimant did not make any sales during the one and only week that he worked under the new pay structure in 2012, and, therefore, he earned only his guaranteed weekly salary of $385. (F.F.¶ 6.) After working only one week under the new pay structure, Claimant voluntarily quit his employment because he believed that Employer had substantially reduced his earnings. (F.F.¶ 7.) He then filed for unemployment benefits.

The Department of Labor and Industry (Department) issued a determination denying benefits. Claimant appealed and, following a hearing at which he and several Employer witnesses appeared and testified, the Referee issued a decision reversing the Department and granting benefits. Employer appealed to the Board and the Board reversed. The Board found that Employer submitted credible evidence that Claimant's pay under the new structure would have been approximately $3,000 more than his pay under the old structure, assuming Claimant maintained the same annual sales figure. Under the commission-only structure, the Board found that Claimant earned $33,733 based on total sales of $337,328 in 2011. Under the new structure, the Board calculated that Claimant would have earned a base salary of $20,200 plus a five percent commission of

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, § 402, *as amended*, 43 P.S. § 802(b). Section 402(b) provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." ·*Id.*

2. The Board is the ultimate fact-finding body in unemployment matters and is empowered to resolve conflicts in evidence, to determine what weight is to be accorded the evidence, and to determine the credibility of witnesses. *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth.1999).

$16,686, for a total of $36,886.[3] (F.F.¶ 5.) The Board reasoned that the record did not contain sufficient evidence to conclude that the alteration of Claimant's pay structure constituted necessitous and compelling cause to voluntarily quit his employment. (Board Opinion at 2–3.)

█ Claimant appealed the Board's decision to this Court.[4] He argues that the Board's decision is not supported by substantial evidence. He notes that his Form W–2 for 2011 shows that he earned $44,679, not $33,733. And he claims that, in addition to changing his pay structure, Employer essentially demoted him from associate estimator/project manager to skilled laborer; Employer hired three new employees, all relatives of the owner, thereby reducing the total sales figure and commission he expected to receive; and Employer reduced his allotted vacation from ten days to five. Claimant contends that the Referee's decision offers a much more accurate description of the facts and the Board's decision is not supported by substantial evidence.[5]

The Board responds that Claimant failed to present sufficient testimony or evidence before the Referee to refute Employer's calculation of his 2011 sales and salary and that the challenged findings are supported by substantial evidence. The Board ex-

plains that it could not consider Claimant's Form W–2, because he did not submit it to the Referee and submitted it for the first time as an exhibit to his request for reconsideration of the Board's decision.[6] (Board Brief at 7 n. 4.)

█ A claimant seeking benefits after voluntarily quitting his job has the burden to demonstrate that he had a necessitous and compelling reason for doing so. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 227–28 (Pa.Cmwlth.2012); *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa.Cmwlth.2006); 43 P.S. § 802(b). To prove a necessitous and compelling reason for leaving employment, the claimant must show circumstances that produced real and substantial pressure to terminate employment and would compel a reasonable person to act in the same manner, and must also show that he acted with ordinary common sense and made a reasonable effort to preserve his employment. *Middletown Township*, 40 A.3d at 228; *Brunswick Hotel*, 906 A.2d at 660. Whether or not a claimant had a necessitous and compelling cause for leaving employment is a question of law subject to this Court's plenary review. *Middletown*

3. The correct figures would be $20,020 in salary ($385 times 52 weeks) and $16,866 in commission ($337,328 times 5%).

4. Our scope of review of the Board's decision is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of facts were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Frazier v. Unemployment Compensation Board of Review*, 833 A.2d 1181, 1183 n. 4 (Pa.Cmwlth.2003) (*en banc*).

5. Although Claimant now identifies several reasons for voluntarily quitting his job other than the alleged decrease in pay, his testimo-

ny before the Referee indicates that when he quit, he complained only about his pay and that it was the only reason for quitting.

6. Employer sought to intervene *pro se* in this proceeding to respond to the arguments in Claimant's appellate brief. We denied intervention in our order of September 27, 2012, because Employer is a corporation and may not represent itself before the court. *Spirit of the Avenger Ministries v. Commonwealth*, 767 A.2d 1130 (Pa.Cmwlth.2001); *Walacavage v. Excell 2000, Inc.*, 331 Pa.Super. 137, 480 A.2d 281 (1984). We advised Employer of its obligation to retain counsel if it was to intervene, and Employer failed to do so.

*Township,* 40 A.3d at 227–28; *Brunswick Hotel & Conference Center,* 906 A.2d at 661.

■ An employer's imposition of a substantial, unilateral change in the terms of employment, including changes that impact an employee's salary, benefits, and other terms of employment, may constitute a necessitous and compelling cause for an employee to terminate his employment. *Middletown Township,* 40 A.3d at 228; *Brunswick Hotel,* 906 A.2d at 660–62; *Morysville Body Works, Inc. v. Unemployment Compensation Board of Review,* 59 Pa.Cmwlth. 486, 430 A.2d 376, 377 (1981). Whether a change in employment conditions is sufficiently substantial to be cause for terminating employment must be measured by the impact on the claimant, and whether it involves any real difference in employment conditions. *Middletown Township,* 40 A.3d at 228; *McCarthy v. Unemployment Compensation Board of Review,* 829 A.2d 1266, 1272 (Pa.Cmwlth. 2003).

The Board found that Employer established that Claimant's pay under the new structure would have been approximately $3,000 **more** than his pay under the old structure, which was premised on the Board's finding that Claimant's annual sales for 2011 totaled $337,328, and, the Board's own calculation that he, therefore, earned approximately $33,733 under the commission-only pay structure. (F.F.¶ 5.) Employer established no such thing and the Board fails in its brief to provide a single citation to the record to substantiate these findings.

■ Notwithstanding this error, the Board found the testimony of Employer's witnesses credible, and that testimony establishes that the change to the terms of Claimant's employment did not justify his quitting. The testimony of Tracy Kelosky, Employer's office manager, established that Claimant's salary would be about the same following the changes to the salary structure. Ms. Kelosky testified extensively regarding Employer's pay structure and the specifics of Claimant's pay and the business he generated. She stated that Claimant earned approximately $40,000 in 2011 (ten percent of $400,000), and that assuming he could generate a similar amount of business, he would earn approximately $40,000 in 2012 under the new structure, calculated as follows: $20,020 in salary plus five percent commission on $400,000 of business, or $20,000. (R. Item 11, Hearing Transcript (H.T.) at 14.)

Claimant cites his Form W–2 as evidence that he was paid $44,679 in 2011. That figure is, in fact, corroborated by one of the accounting worksheets that Ms. Kelosky submitted during the hearing. (H.T. Exhibit 1, Account Report at 1 (showing "draw on comp" for David Whitlatch totaling $44,678.88).) However, Ms. Kelosky testified, and the accounting worksheet substantiated, that although Claimant received that amount during 2011, it did not represent Claimant's actual commission, but the amount that Claimant had drawn against his commission. (H.T. at 12.) At the end of the year, Claimant's commission account reflected a deficit of $4,867.45, meaning that he had been overpaid by that amount. (H.T. Exhibit 1, Account Report at 5.) Subtracting that deficit from the amount reflected in Claimant's 2011 W–2 ($44,679 less $4,867.45) establishes that Claimant's total commission for 2011, and his total pay, was $39,811.55, or approximately $40,000, which is precisely what Ms. Kelosky testified. Thus, even if the Board had considered the belatedly-submitted Form W–2, the holding would not change.

In response, Claimant offers the following estimated calculations in his brief, which were also included in his testimony

before the Referee. In 2011, company sales were approximately $800,000, and the ten percent straight commission was shared between him and one other estimator, earning approximately $40,000 each. Under the new pay structure with the additional employees, that same $800,000 would be split among five estimators at five percent commission, for $8,000. Added to his salary of $20,020, Claimant could expect to earn $28,020 in 2012, significantly less than his 2011 pay. In order to earn the same $40,000, company sales would need to increase to over $2,000,000 annually. As Claimant puts it: "Achievable? Yes. Likely? No." (Claimant Brief at 9.)

Claimant's hypothetical does not account for the fact that Ms. Kelosky testified to the contrary, explaining that Claimant could expect to generate about the same amount of sales and earn about the same pay. (H.T. at 12.) Further, Employer anticipated generating more business in 2012, having hired more employees. Employer's expectation of generating more business in 2012 was reasonable, given Ms. Kelosky's testimony, which was corroborated by Employer's other witnesses, that Claimant had refused certain jobs in 2011 and Employer was otherwise unable to do the work with the employees then available. (H.T. at 10, 13.) The Board found that Employer's expectation in that regard was credible.

Because substantial, credible evidence establishes that Claimant was likely to earn approximately the same amount under the new salary structure as he did under the old, we find that Claimant failed to meet his burden of showing that the changes to his work conditions created a necessitous and compelling reason for him to voluntarily quit his job. Accordingly, we affirm the order of the Board.

*ORDER*

AND NOW, this 21st day of February, 2013, the order of the Unemployment Compensation Board of Review is affirmed.