IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Rensman,                           :
                        Petitioner              :
                                                :
            v.                                  :    Nos. 475 & 476 C.D. 2017
                                                :    Submitted:  September 1, 2017
Unemployment Compensation                       :
Board of Review,                                :
                        Respondent              :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED: October 2, 2017


            Christopher Rensman (Claimant) petitions *pro se* for review from

orders of the Unemployment Compensation Board of Review (Board) that found

him ineligible for unemployment compensation (UC) benefits under Section

402(b) of the Unemployment Compensation Law (Law)[1] because he voluntarily

quit his employment without a necessitous and compelling reason, as well as

imposing a fault overpayment pursuant to Section 804(a) of the Law because he

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(b).  Section 402(b) provides, in pertinent part, that "[a]n employe shall be ineligible for
compensation for any week . . . (b) [i]n which his unemployment is due to voluntarily leaving
work without cause of a necessitous and compelling nature. . . ."

initially gave the UC Service Center an incorrect reason as to how he became unemployed.[2] For the reasons that follow, we affirm.

## I.

On July 2, 2016, Claimant quit his job with Abington Auto World (Employer) as a service advisor where he had worked for a little over a year earning $350.00 per week, plus commission. Claimant then applied for unemployment compensation benefits giving the reason for quitting as lack of work. Claimant received $563.00 in unemployment benefits starting with the week ending August 27, 2016. However, in his Questionnaire taken by telephone on September 6, 2016, Claimant admitted that he voluntarily quit because he was promised a promotion that he never received and his pay structure had changed. In a follow-up telephone interview, Claimant told the UC Service Center that Employer was going to restructure his pay from being salary and commission to just commission and draw, which would result in his making $5,000 to $8,000 less per year.

---

[2] 43 P.S. § 874(a). Section 804(a) provides, in pertinent part, that:

> [a]ny person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue.

*Id.*

In its response, Employer denied that Claimant was promised anything when hired other than he might have an opportunity to grow. Employer acknowledged that a new salary structure had been implemented on August 1, 2016, but that was after Claimant had already quit, and Claimant's manager never discussed the new pay structure with him prior to his quitting.

The UC Service Center determined Claimant was ineligible for benefits because, while Claimant may have had a necessitous and compelling reason to quit, he failed to pursue alternatives available to resolve the situation. It also imposed a $563.00 fault overpayment for the unemployment benefits he received due to his representation that his separation was due to lack of work. Claimant appealed.

Before the Referee, Claimant testified that he originally took the job with Employer with the understanding that his pay was going to be roughly $60,000 per year. However, once he began working, he found that he was making $700 to $800 a week or between $45,000 and $47,000 per year. Claimant admitted that his $60,000 per year salary was never put in writing and the individual who gave him this figure no longer works for Employer.[3] Claimant testified that he continued working for Employer hoping that his pay would increase, but his average pay remained lower than what he believed was originally promised. When

---

[3] Claimant testified that Employer's previous service manager, Danny, calculated the $60,000 figure based upon Claimant earning a base salary of $350 per week plus bonuses and commission, which was estimated using Employer's production numbers. Claimant testified that he left his prior job to join Employer in part because of this promised salary.

3

he told Employer he was considering quitting due to his dissatisfaction with his pay, Claimant testified that he was told to hang in there because the floor manager position would become available at a higher rate of pay. However, approximately two months later, when the floor manager position became open, without Claimant being given the opportunity to interview, it was given to someone else.

Claimant went on to testify that Kyle, the Parts Manager or Assistant Manager, told him that Employer was going to change everyone's pay structure from commission to a draw system, meaning he would be paid based upon the production of the entire shop and not his individual commission. From his conversation with Kyle, Claimant expected the change in pay structure to occur in July 2016 but it was not implemented until August 2016, which was after he quit. Claimant testified that he quit because he felt the new pay structure would mean he would be earning even less money. Claimant stated that he had worked under that type of system before and never would have taken the position with Employer if he knew that a draw system would be implemented.

John Davis (Davis) testified that he became Employer's service manager on June 1, 2016. Davis testified that he did not discuss any potential changes in pay structure with anyone, although he acknowledged there was some speculation that there was going to be a change. Davis testified that Employer did move to a draw system on August 1, 2016, which was explained to the employees at the end of July 2016 after Claimant quit.

4

Davis went on to testify that Claimant came to see him in June 2016 stating he was ready to give his two weeks' notice because he was not happy with Employer and some of the things he had been promised by the previous service manager never came to fruition. Claimant told Davis he was flexible regarding his last day of work because he did not have another job lined up and he ended up staying for roughly three more weeks.

The Referee found Claimant ineligible for benefits under Section 402(b) of the Law because he voluntarily quit for personal reasons. The Referee found that even though he may have quit because of speculations that Employer was about to make changes to the pay structure, he did not have a necessitous and compelling reason because he did not receive official confirmation of this change and Employer did not institute any changes to his pay prior to his quitting. As to the fault overpayment, the Referee found that Claimant was not at fault in receiving benefits and the overpayment was modified from a fault to a non-fault overpayment. Claimant appealed to the Board.

The Board, issuing its own findings of fact,[4] found that Claimant was ineligible for benefits because he quit without a necessitous and compelling reason. In doing so, the Board found not credible Claimant's assertion that when he accepted the offer of employment, Employer's former service manager told him he would earn $60,000 annually. The Board also did not find credible Claimant's

---

[4] The Board is the ultimate fact-finder, with the power to substitute its judgment for that of a referee on both disputed facts and credibility determinations. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1385-88 (Pa. 1985).

5

assertion that a coworker informed him that Employer would be changing its pay structure to a draw system and, regardless, held that this information was too speculative to be relied on because it was hearsay. The Board then found that the only thing that Claimant's testimony established was that he was dissatisfied with his rate of pay which is not a necessitous and compelling reason to voluntarily terminate one's employment. Based on those findings, it found that Claimant failed to establish a substantial unilateral change in his employment agreement or that he was deceived regarding the conditions of employment when he was hired.

The Board also imposed a fault overpayment of $563.00 because those benefits were received because Claimant told the UC Service Center that his unemployment was caused by a lack of work when he later admitted he voluntarily quit.[5] Claimant then filed this petition for review.[6]

## II.

Claimant essentially argues that Employer's change to his pay structure produced real and substantial pressure on him to terminate his

---

[5] On March 1, 2017, the Board re-issued its decision in order to correct an error in the decision number. The decisions are otherwise identical. Claimant filed petitions for review of both decisions with this Court, and by order dated May 30, 2017, we granted the Board's motion to consolidate the petitions.

[6] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Whitlatch v. Unemployment Compensation Board of Review*, 61 A.3d 397, 400 n.4 (Pa. Cmwlth. 2013).

6

employment, and this change would compel a reasonable person to act in the same manner, i.e., he had a necessitous and compelling reason to leave his employment.

While "[m]ere dissatisfaction with wages or working conditions is not sufficient to establish necessary and compelling reasons to quit employment,"[7] *Monaco v. Unemployment Compensation Board of Review*, 565 A.2d 127, 130 (Pa. 1989):

> [a]n employer's imposition of a substantial, unilateral change in the terms of employment, including changes that impact an employee's salary, benefits, and other terms of employment may constitute a necessitous and compelling cause for an employee to terminate his employment. Whether a change in employment conditions is sufficiently substantial to be cause for terminating employment must be measured by the impact on the claimant, and whether it involves any real difference in employment conditions.

---

[7] To be entitled to unemployment compensation benefits, a claimant who voluntarily quits his employment bears the burden of proving he had cause of a necessitous and compelling nature to do so. *RIO Supply, Inc. of PA v. Unemployment Compensation Board of Review*, 124 A.3d 401, 404 (Pa. Cmwlth. 2015*); Whitlatch*, 61 A.3d at 400; 43 P.S. § 802(b). To show the cause is of a necessitous and compelling nature, a claimant must demonstrate: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment." *Brunswick Hotel and Conference Center v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006) (citing *Fitzgerald v. Unemployment Compensation Board of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998)). Whether a claimant has a necessitous and compelling reason to voluntarily quit his employment is a question of law subject to this Court's plenary review. *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 228 (Pa. Cmwlth. 2012).

*Whitlatch v. Unemployment Compensation Board of Review*, 61 A.3d 397, 401 (Pa. Cmwlth. 2013) (citations omitted). For a claimant to make out a claim that he had good cause to quit due to a change in his employment conditions, the claimant must show that the cause of leaving employment was a change in the terms of his employment and those changes were substantial.

Claimant has not met his burden of showing that the reason he quit was because of any change in the terms of his employment, i.e., the proposed change to pay structure. The Board specifically discredited Claimant's assertion that a coworker informed him that Employer would be changing its pay structure to a draw system. In essence, the Board found that Claimant was unaware of the upcoming changes in the pay structure when he quit and that he quit because of his dissatisfaction with his pay.[8] Because the Board found that he was unaware of the changes in pay structure, Claimant has not made out a change in employment conditions, i.e., that the new pay structure caused him to quit.

Even if we ignore that the Board found that Claimant was unaware that the pay structure was going to change and Employer did not change its pay structure until *after* he had already quit, Claimant also did not establish that there would be any reduction in his pay under the new pay structure. To do so, Claimant was required to offer evidence regarding his pay both before and after Employer's

---

[8] The Board is the ultimate fact-finder in unemployment compensation cases, and questions regarding the weight of evidence and witness credibility are solely within its province. *Whitlatch*, 61 A.3d at 399, n.2 (citing *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)).

change in pay structure to a draw system. Otherwise, it is impossible to determine whether there would be any reduction in pay and, if there was, if that difference would be substantial. *Elliott Co., Inc. v. Unemployment Compensation Board of Review*, 29 A.3d 881, 888 (Pa. Cmwlth. 2011) ("[a]lthough this Court recognizes no talismanic percentage figure governing reductions in pay, the percentage by which a claimant's pay or retirement income is unilaterally reduced is a significant factor in determining whether the claimant had necessitous and compelling cause to quit employment.") (citation omitted).[9]

Accordingly, because Claimant has not established that he had a necessitous and compelling reason to leave his employment, the Board's orders are affirmed.

_____
DAN PELLEGRINI, Senior Judge

---

[9] Claimant has waived the issue of the fault overpayment because he has not addressed it in his brief to this Court. *See Tyler v. Unemployment Compensation Board of Review*, 591 A.2d 1164 (Pa. Cmwlth. 1991). In any event, we can discern no error in the Board's imposition of a fault overpayment.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher Rensman,                    :
                 Petitioner          :
                              :
          v.                        :   Nos. 475 & 476 C.D. 2017
                              :
Unemployment Compensation       :
Board of Review,                        :
                 Respondent          :

# **O R D E R**

AND NOW, this 2nd day of October, 2017, the orders of the Unemployment Compensation Board of Review in the above-captioned matter are hereby affirmed.

 

_____
DAN PELLEGRINI, Senior Judge