Jonelle Ensor, : 
            Petitioner : 
            : 
            v. : 
            : 
Unemployment Compensation : 
Board of Review, : No. 1427 C.D. 2023
            Respondent : Submitted: December 9, 2024

BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: January 17, 2025

Jonelle Ensor (Claimant) petitions this Court, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) October 30, 2023 order affirming the Referee's decision that denied Claimant UC benefits under Section 402(b) of the UC Law (Law).[1] Jonelle Ensor (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) October 30, 2023 order affirming the Referee's decision that denied Claimant UC benefits under Section 402(b) of the UC Law (Law).[2] Essentially, there are two issues before this Court: (1) whether Claimant voluntarily left her

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntary separation without cause of a necessitous and compelling nature).

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntary separation without cause of a necessitous and compelling nature).

employment; and (2) whether the UCBR's Findings of Fact (FOF) 5, 13, and 16 were supported by substantial evidence. After review, this Court affirms.

On September 12, 2013, Claimant and Clearfield Professional Group (Employer) entered into a contract (Original Contract) which provided the following terms for Claimant's employment as a Physician Assistant:

> 1. [Claimant] will be paid a salary of $75,000.00 per year ($2,884.62 biweekly minus all applicable taxes, etc.)[,] effective September 30, 2013. On April 15, 2013, [sic] a re-assessment will be carried out regarding profit/loss over the first six months of the year and reimbursement will be adjusted at that time.
>
> 2. [Claimant] will work 40 hours per week as per schedule developed between [Claimant] and [Employer]. Additional hours may be required as directed by the Physician Supervisor. [Claimant] will be reimbursed at the rate of $54.09 for each hour worked in excess of 40 hours per week.
>
> 3. [Claimant] will be provided a personal monthly profit/loss statement as soon as it is available at the end of each month.
>
> 4. [Employer] agrees to make regular contributions for [Claimant] into the [Employer] Retirement Plan as is for other eligible employees of [Employer].
>
> 5. [Claimant] will be **entitled to three weeks of vacation and one week of educational leave** during the term of this contract. Vacation and educational leave may be taken **at her discretion**. [Claimant] will also be entitled to **five days of sick/personal leave** during the term of the contract. [Claimant] will also be entitled to **seven (7) paid holidays per year** as are other full-time employees of [Employer].
>
> 6. [Claimant] will remain eligible for health care benefits as are other full-time employees of [Employer]. Family health insurance, if desired, will be provided with the premiums paid by [Employer]. Individual vision coverage

will be provided by [Employer]. Family vision coverage is available with the difference between family and individual premiums paid through payroll deduction.

7. It is understood that [Employer] will be responsible for paying the necessary costs of malpractice insurance and the dues necessary for [Claimant] to maintain good standing in the national, state[,] and local Physician Assistant Societies. [Employer] will also pay registration fees and expenses associated with [Claimant's] Continuing Medical Education.

8. It is understood that **the term of this [Original C]ontract will be for one year commencing on September 30, 2013. Contract negotiations for subsequent year(s) will be initiated sixty (60) days before the termination of this [Original C]ontract**.

9. It is understood that the terms of this [Original C]ontract are dependent upon [Claimant] maintaining National Certification as a Physician Assistant as well as maintaining an unrestricted license to practice as a Physician Assistant in the [s]tate of Pennsylvania.

10. **It is understood by the parties of this [Original C]ontract that this [Original C]ontract may be terminated within [30] days of written notification of the same**.

Reproduced Record (R.R.) at 63a (emphasis added). Notwithstanding the Original Contract's one-year expiration date, Claimant continued working for Employer thereafter, pursuant to the terms of the Original Contract as amended by verbal agreements to increase Claimant's pay.

On August 25, 2015, Claimant and Employer entered into a Loan Repayment Assistance Agreement (LRAA) subject to the following terms:

This [LRAA] entered into between [Claimant] and [Employer] is intended to provide student loan repayment assistance to [Claimant] for obligations previously incurred to finance her professional education. Nothing herein commits [Employer] to future financial obligations incurred by [Claimant].

3

It is understood that the total of [Claimant's] payments is $1,242.42 per month.  [Employer], agrees to increase [Claimant's] monthly salary by $1,600.00 **for the remaining term of her loans**.  It is understood by both parties that this salary increase is for the purpose of loan repayment assistance and **will terminate at the end of the loan repayment term**, **which is scheduled for October 9**, **2024**.  At that time, [Claimant's] salary will revert to her current salary or a salary to be re-negotiated between [Claimant] and [Employer].

. . . .

**In consideration of this loan repayment assistance**, [**Claimant**] **agrees to remain in the employ of** [**Employer**] **for a term of one (1) year after the loan repayment date**, **ending on October 9**, **2025**. [**Claimant**] **also agrees to maintain a schedule of seeing an average of 260 or more patients per month**.

This [LRAA] is effective August 24, 2015 through October 9, 2025.

R.R. at 65a (emphasis added).

In June 2022, Claimant was diagnosed with pancreatitis which necessitated a two-week absence from work, and which had the potential to require future work absences.  On June 24, 2022, Employer presented Claimant with the following terms for a new proposed contract (Proposed Contract):

1. [Claimant] will be paid an **hourly rate** [**of**] [**$**]**48.00 and the expectation is to work 5 days/week**, **40 hours**. **No overtime is expected and will require prior authorization** well before overtime would be incurred.

2. [Claimant] will be provided a personal [q]uarterly profit/loss statement as soon as it is available at the end of each [q]uarter.  This will serve as a resource for possible raises, and/or not renewing the annual contract for employment.

3. [Employer] agrees to make regular contributions for the 401k into the [Employer] Retirement Plan as is done for

4

other eligible employees of [Employer].  This is currently a dollar for dollar match up to 4%.

4. [Claimant] will be entitled to **three weeks of vacation, given annually**, and then follow the vacation time accrual as outlined in the Employee Handbook.  **Vacation will be taken only one week at a time**, **and not in conjunction with another provider**, unless prior approval has been arranged.  **Three days of educational leave will be provided annually** at [Employer] to ensure [Claimant] uses this for meeting [her] . . . requirements for licensure; **any unused time will not be paid out at the time of [Claimant']s exit from [Employer]**. [Claimant] will also be entitled to [**five**] **days of sick/personal leave per year**. **This will be a use/lose benefit and will not be paid out at the time of departure from [Employer]**.  [Claimant] will also be entitled to **seven** (**7**) **paid holidays per year** as are other full-time employees of [Employer].  If [Claimant] is scheduled to work on the day that the [h]oliday is celebrated on. [sic] (Follow Employee Handbook).

5. [Claimant] will remain eligible for health care benefits as are other full-time employees of [Employer].

6. It is understood that [Employer] will be responsible for paying the necessary costs of malpractice insurance and the dues necessary for [Claimant] to maintain good standing in the national, state[,] and local Physician Assistant Societies, while employed at [Employer].  If [Claimant] exits [Employer], [Claimant] will reimburse any months remaining.

7. It is understood that the term of this [Proposed C]ontract will begin [July 26, 2022].  **And the separate [LRAA] is considered completed**.  **Contract negotiations for subsequent year**(**s**) will be initiated sixty (30) [sic] days before the termination of this [Proposed C]ontract.

8. It is understood that the terms of this [Proposed C]ontract are dependent upon [Claimant] maintaining National Certification as a Nurse Practitioner as well as maintaining an unrestricted license to practice as a [Physician Assistant] in the [s]tate of Pennsylvania.

9. It is understood by the parties of this [Proposed C]ontract that this [Proposed C]ontract may be terminated within [30] days of written notification of the same.

R.R. at 66a (emphasis added).

By August 25, 2022 correspondence (August Letter), Claimant's attorney (Counsel) notified Employer:

On September 12, 2013, [Employer] and [Claimant] entered into a binding[,] written [Original Contract]. The [Original] Contract was verbally amended as to the pay provisions in the first part of 2014, and again in 2015, but otherwise remains in effect as initially written. In 2015, [Claimant's] pay was changed to $49.12/hour (which works out to $102,000[.00] per year), as reflected in her paychecks for years. She has not received a raise since. No other provisions of the [Original] Contract were amended, verbally or otherwise.

The [Original] Contract was never terminated. At Section 10, the [Original] Contract clearly requires 30 days' written notice prior to its termination. Whenever [Claimant] brings up the [Original] Contract with your office manager, the office manager consistently refuses to acknowledge its provisions as applicable and binding. Consultation with your counsel should confirm the opposite. If [Employer] is represented by counsel with respect to this matter, please ask [Employer's] counsel to contact me.

R.R. at 58a.

Counsel further recounted in the August Letter:

After [Claimant's] recent bout with pancreatitis and the associated ongoing health conditions surfaced, [Employer] hired another physician[] assistant, cut [Claimant's] patient volume back, told her she would no longer be able to take two weeks' vacation back-to-back, and, most surprisingly, presumed to unlawfully and retroactively reduce [Claimant]'s rate of pay by $10[.00] an hour, down to $39.12 per hour, for the two-week pay period from July 17 through July 30, 2022, summarily informing her on receipt of her paycheck that her pay had

6

been retroactively reduced and would continue to be reduced until she signed the [Proposed C]ontract that [Employer] provided to [Claimant] . . . . [Employer] wisely abandoned that unlawful tactic after only one pay period, presumably after its counsel advised it that doing so was not legally justifiable, but [Employer] continued to maintain the threat that [Claimant] will be fired if she does not sign the Proposed . . . Contract by today, August 26, 2022. [Claimant] declines to sign any new employment contract that would result in material adverse changes to her terms and conditions of employment.

The Proposed . . . Contract that [Employer] is trying to force [Claimant] to sign is significantly worse than the [Original] Contract . . . currently . . . in effect, representing . . . materially adverse changes in the terms and conditions of [Claimant's] employment. The Proposed . . . Contract was not proposed due to any deficient performance reasons or other such cause[.] . . . [I]t is clear that [Claimant] is being singled out for this outrageous treatment due to her chronic health condition, which is a disability as defined under the Americans with Disabilities Act [of 1990 (ADA)].[3]

R.R. at 59a.

Counsel demanded in the August Letter:

[Claimant] insists that [Employer] stop discriminating against her because of her disability by taking unwarranted adverse employment actions against her. At the minimum, even if disability discrimination [was] not illegal, [Claimant] would be entitled to [30] days' written notice prior to termination of the [Original] Contract. In addition, if [Employer] chooses to fire [Claimant] in violation of the [ADA] and her [Original] Contract and without cause, [Employer] will remain liable under the [LRAA] to pay $1,600[.00] per month for the remaining 26 months (a total of $41,600[.00]). [Employer] cannot escape liability under the [LRAA] by reducing [Claimant's] patient volume or by wrongfully terminating her.

---

[3] 42 U.S.C. §§ 12101-12213.

> In addition, [Claimant] demands that [Employer] immediately pay [Claimant] all of her improperly withheld pay . . . .
>
> If [Employer] prefers to terminate the [Original] Contract and settle the disability discrimination and Wage Payment and Collection Law[4] violations, [Claimant] might be amenable to an appropriate buyout/settlement agreement, and [Employer] can direct any proposals to me.

R.R. at 58a-59a.

By September 23, 2022 letter, Employer notified Claimant: "The intent of this letter is to inform you that your last day of employment with [Employer] will be on Thursday, [September 29, 2022]. We appreciate your time here at [Employer] and do wish you the best of luck in your future endeavors." R.R. at 10a.

On October 17, 2022, Claimant applied for UC benefits. The Altoona UC Service Center determined that Claimant was eligible for benefits under Section 402(b) of the Law because Claimant demonstrated a necessitous and compelling reason for voluntarily leaving her employment. Employer appealed and a Referee held a hearing on April 4, 2023. On April 19, 2023, the Referee reversed the UC Service Center's determination, concluding that Claimant was ineligible for benefits because she voluntarily left her employment without a necessitous and compelling reason. The Referee made the following FOFs in support of the reversal:

> 1. [] Claimant was employed by [Employer] as a full-time Physician[] Assistant from September 30, 2013, until September 29, 2022, her last day of work.
>
> 2. [] Claimant had a written [Original C]ontract effective September 30, 2013.
>
> 3. [] Claimant then had a verbal agreement regarding rate of pay.
>
> 4. On August 25, 2015, [] Claimant and Employer agreed upon a[n LRAA] which would provide [] Claimant with

---

[4] Act of July 14, 1961, P.L. 637, *as amended*, 43 P.S. §§ 260.1-.13, 260.45

8

$1,600[.00] per month if she successfully met the requirements of the [LRAA].

**5. The $1,600[.00] per month was never a guaranteed payment**.

6. [] Claimant estimated her hourly rate at $49.10 per hour if she received the additional $1,600[.00] per month.

7. Due to multiple new hires, [] Employer was providing all employees with updated and uniform contracts.

8. [] Claimant's [Proposed C]ontract did not [contain] the loan repayment incentive.

9. The [Proposed C]ontract did provide an hourly rate of $48[.00] per hour which was approximately $1[.00] less than the maximum [] Claimant could receive if she met the requirements of the previous contract.

10. The [Proposed C]ontract was for the same amount of vacation. The only difference with the vacation in the [Proposed C]ontract was that any leave of two weeks or more needed pre-approval.

11. The [Proposed C]ontract also provided that the vacation pay and sick pay would not roll over.

12. [] Claimant received the [Proposed C]ontract in early July 2022.

**13. Following receipt of the [Proposed C]ontract, [] Claimant made no attempt to negotiate the terms of the [Proposed C]ontract with [] Employer**.

14. [] Claimant failed to sign the [Proposed C]ontract.

15. [] Claimant was permanently separated on September 28, 2022, [sic] due to her failure to sign the [Proposed C]ontract.

**16. Continuing work was available had [] Claimant voluntarily signed the [Proposed Contract]**.

R.R. at 69a (emphasis added).

9

On May 8, 2023, Claimant appealed to the UCBR. On October 30, 2023, the UCBR adopted the Referee's factual findings and legal conclusions and affirmed the Referee's determination.[5] Claimant appealed to this Court.[6]

Claimant first contends that the UCBR erred by concluding that Claimant voluntarily terminated her employment where the record evidence establishes that Employer discharged Claimant.

> Section 402(b) of the Law provides, in relevant part, that an employee shall be ineligible for UC benefits for any week "[i]n which h[er] unemployment is due to <u>voluntarily leaving work</u> without cause of a necessitous and compelling nature[.]" 43 P.S. § 802(b). This Court has explained:
>
>> The claimant has the burden of proving that [s]he had a necessitous and compelling cause for voluntarily terminating [her] employment. *PECO Energy Co. v. Unemployment Comp. Bd. of Rev*[.], 682 A.2d 58, 60 (Pa. Cmwlth. 1996). A necessitous and compelling cause is that which "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Comp. Bd. of Rev*[.], . . . 378 A.2d 829, 832-33 ([Pa.] 1977). To meet this burden, the claimant must generally demonstrate that [s]he took "all necessary and reasonable steps to preserve the employment relationship." *PECO Energy Co.*, 682 A.2d at 61.

---

[5] "[T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence." *HPM Consulting v. Unemployment Comp. Bd. of Rev.*, 185 A.3d 1190, 1194 (Pa. Cmwlth. 2018) (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008)).

[6] "This Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the agency's practices or procedures were violated, or whether the findings of fact were supported by substantial evidence." *Sangston v. Unemployment Comp. Bd. of Rev.*, 325 A.3d 892, 893 n.4 (Pa. Cmwlth. 2024).

*St. Clair Hosp. v. Unemployment Comp. Bd. of Rev.*, 154
A.3d 401, 404-05 (Pa. Cmwlth. 2017) (*en banc*) . . . .

*Mroz v. Unemployment Comp. Bd. of Rev.*, 313 A.3d 1150, 1152 (Pa. Cmwlth. 2024)

(underline emphasis added; bold emphasis omitted).

This Court has explained:

Whether a [c]laimant's separation from employment is the
result of a voluntary action or a discharge is a question of
law subject to this Court's review and must be determined
from a totality of the facts surrounding the cessation of
employment. *Key v. Unemployment Comp. Bd. of Rev*[.],
687 A.2d 409, 412 (Pa. Cmwlth. 1996). "It is a claimant's
burden to prove that h[er] separation from employment
was a discharge." [*Id*]. If a claimant proves that [s]he was
discharged, then the burden to prove that the claimant was
discharged for willful misconduct is on the employer. *Id*.
at 412-13. If a claimant fails to prove that [s]he was
discharged, then the claimant has the burden to prove
necessitous and compelling reasons for quitting. *See
Empire Intimates v. Unemployment Comp. Bd. of Rev*[.],
655 A.2d 662, 664 (Pa. Cmwlth. 1995).

In *Hospital Service Ass*[*'n*] *of Northeastern Pennsylvania
v. Unemployment Compensation Board of Review*, . . . 476
A.2d 516 ([Pa Cmwlth.] 1984), this Court explained that
"[c]**laimants who**, *while employed*, **refuse to accept an
offer of continued employment are deemed to have quit
their position**, and are thus subject to Section 402(b) of
the [Law], which denies [UC] to a claimant who
'voluntarily [leaves] work without cause of a necessitous
and compelling nature.'" *Hospital Serv. Ass'n* . . . , 476
A.2d [at] 518 . . . (emphasis and alteration in original).

*Middletown Twp. v. Unemployment Comp. Bd. of Rev.*, 40 A.3d 217, 224-25 (Pa.

Cmwlth. 2012) (bold emphasis added).

This Court has expounded:

**The phrase** '**voluntarily leaving work**' in
Section 402(b)[] [of the Law] **means that**
'[s]**he left of h**[er] **own motion**; [s]he was
not discharged. It is the opposite of a

11

discharge, dismissal[,] or layoff by the employer or other [a]ction by the employer severing relations with [its] employes . . . .' *Labor* [*&*] *Indus*[.] [*Dep't*] *v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 3 A.2d 211, 213, . . . ([Pa. Super.] 1938). . . .

*Hutt* [*v. Unemployment Comp. Bd. of Rev.*], 367 A.2d [390,] 391 [(Pa. Cmwlth. 1976)] (emphasis added).

The Pennsylvania Supreme Court clarified:

The resolution of [whether an employee voluntarily quit h[er] job] requires a determination of the intent of the employee[]. Case law has established '**a finding of voluntary termination is essentially precluded unless the claimant had a conscious intention to leave h[er] employment**.' . . . *Roberts v.* [*Unemployment Comp. Bd. of Rev.*], . . . 432 A.2d 646[, 648], . . . ([Pa. Cmwlth.] 1981). Furthermore, the case law supports the [] contention that leaving the premises is not enough to determine intent to voluntarily terminate employment. However, where an employee without any action of the employer resigns, leaves[,] or quits employment[,] that action amounts to a voluntary leaving. In all cases the totality of the circumstances surrounding the incident must be considered when determining the intent to quit.

*Monaco v. Unemployment Comp. Bd. of Rev*[.], . . . 565 A.2d 127, 129 ([Pa.] 1989) (emphasis added; citations omitted).

*Gosner v. Unemployment Comp. Bd. of Rev.*, 234 A.3d 934, 937-38 (Pa. Cmwlth. 2020).

It is true that this [C]ourt has held that "[]when an employee engages in conduct which necessarily leads to termination of [her] employment, the [UCBR] is clearly justified in characterizing such termination as voluntary.[]" *Comstock v. Unemployment Comp*[.] *B*[*d.*]

12

*of Rev*[.], . . . 437 A.2d 1318, 1319 ([Pa. Cmwlth.] 1981) (quoting *Fisher v. Unemployment Comp*[.] *B*[*d.*] *of Rev*[.], . . . 393 A.2d 1304, 1306 ([Pa. Cmwlth.] 1978)). For instance, in *Comstock*, the claimant was laid off from his position, but . . . was aware that he could exercise his privilege of seniority under the applicable collective bargaining agreement and that he could continue working by exercising this "bumping" right. We found that since the claimant **had a right to continue employment under the collective bargaining agreement**, **his failure to exercise that right constituted a voluntary termination of his employment**.

*Maines v. Unemployment Comp. Bd. of Rev.*, 532 A.2d 1248, 1251 (Pa. Cmwlth. 1987) (emphasis added).

Here, Claimant contends that she did not voluntarily leave work because she was working subject to the Original Contract's terms and intended to continue to do so until such time as Employer terminated her employment. Claimant entered into the Original Contract - a one-year employment contract[7] - on September 13, 2013, to commence on September 30, 2013. The record does not reflect that the parties thereafter executed yearly contracts. Instead, the parties continued to perform in accordance with the Original Contract's terms, as supplemented by the LRAA and verbally-approved salary increases.[8] Although the Original Contract was

---

[7] *See* R.R. at 63a, ¶ 8.

[8] With respect to the nature of Claimant's employment at the time of her employment termination, the Pennsylvania Superior Court has explained:

> In a 1949 Superior Court case, we held that the employee's **continuation of his employment**, **without objection**, **following the expiration of the employee's** one-year **contract**, **resulted in a renewal by implication of the same contract**, **under the same terms and conditions**. *Smith v. Shallcross*, . . . 69 A.2d 156 ([Pa. Super.] 1949); *see also DeMuth v. Miller*, . . . 652 A.2d 891 ([Pa. Super.] 1995) . . . . In support of its decision[,] the *Shallcross* Court cited to *Williston on Contracts*.
>
> > Where a contract of employment for a definite time is made and the employee's services are continued,

13

for a one-year term, because neither party terminated it, upon its expiration, the Original Contract automatically renewed each year thereafter with the same terms, as modified by the LRAA and the verbally-approved salary increases. Therefore, the Original Contract, as modified, automatically renewed on September 30, 2021, and remained in effect until September 29, 2022. Further, based on the Original Contract's terms, either party could terminate it with 30 days' written notice, and negotiations for the Proposed Contract could begin 60 days prior to the contract's September 29, 2022 expiration.

On July 26, 2022, Employer informed Claimant that it intended not to renew the Original Contract set to expire on September 29, 2022, and offered Claimant continued employment under the Proposed Contract with different terms. Thus, Employer's September 23, 2022 letter did not terminate Claimant's employment, but rather confirmed the Original Contract's September 29, 2022 expiration, and Employer's intention to proceed under a new one. Because Claimant refused "to accept an offer of continued employment[, she is] deemed to have quit [her] position [by rejecting the Proposed Contract], and [is] thus subject to Section 402(b) of the [Law.]" *Middletown Twp.*, 40 A.3d at 225.

This Court's conclusion that Claimant voluntarily quit her employment does not end the inquiry. The law is well established:

> **In order to establish cause of a necessitous and compelling nature**, **a claimant must establish that (1)**

---

> after the expiration of the time, **without objection**, the inference is that **the parties have assented to another contract for a *term of the same length with the same salary and conditions of service***, following the analogy of a similar rule in regard to leases.
>
> *Shallcross*, [69 A.2d] at 158 ([italicized] emphasis in original), *quoting* 1 Williston, Contracts, § 90.

*Janis v. AMP, Inc.*, 856 A.2d 140, 147-48 (Pa. Super. 2004) (bold emphasis added).

14

**circumstances existed that produced real and substantial pressure to terminate employment**, (**2**) **like circumstances would compel a reasonable person to act in the same manner**, (**3**) **the claimant acted with ordinary common sense**, **and** (**4**) **the claimant made a reasonable effort to preserve her employment**. *Procito v. Unemployment Comp. Bd. of Rev*[.], 945 A.2d 261, 265 (Pa. Cmwlth. 2008).

"[I]t is well[]settled that an employer's imposition of a substantial unilateral change in the terms of employment constitutes a necessitous and compelling cause for an employee to terminate her employment." *Brunswick Hotel* [*& Conf.*] *Ctr., LLC v. Unemployment Comp. Bd. of Rev*[.], 906 A.2d 657, 660 (Pa. Cmwlth. 2006). **Whether a change is** "**so substantial as to warrant necessitous cause for terminating employment**," **must be determined based on the circumstances of each case**. *Id*., 906 A.2d at 660. "[**S**]**ubstantiality is measured by the impact on the employee**, **and whether the change involves any real** '**difference**' **in employment conditions**." *McCarthy v. Unemployment Comp. Bd. of Rev*[.], 829 A.2d 1266, 1272 (Pa. Cmwlth. 2003). The reasons for the change in employment conditions are irrelevant, as "[i]t is not a defense for the employer to merely establish that it had good reasons for the unilateral change." *Chavez (Token) v. Unemployment Comp. Bd. of Rev*[.], 738 A.2d 77, 82 (Pa. Cmwlth. 1999) . . . .

*Middletown*, 40 A.3d at 227-28 (emphasis added).

Claimant argues that the Referee's FOFs 5, 13, and 16, which the UCBR adopted, were not supported by substantial evidence. Rather, Claimant contends that the record evidence demonstrates that Claimant had a necessitous and compelling reason for leaving her employment. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Woodring v. Unemployment Comp. Bd. of Rev*., 284 A.3d 960, 964 (Pa. Cmwlth. 2022).

Specifically, Claimant asserts:

15

Employer knew that a critical term of the [Current Contract] provided [] Claimant with a significant amount of paid vacation time, which she used at her pleasure and sole discretion, and this eventually dissatisfied Employer, invoking [sic] it to propose the . . . Proposed . . . Contract that substantially curtailed Claimant's use of vacation time, particularly by eliminating Claimant's right to take two weeks of vacation time consecutively. [*See*] R.R. at 48a-55a.

Further, by its terms, the . . . Proposed . . . Contract would have: (1) terminated the [LRAA] and reduced Claimant's hourly compensation to $48.00 from approximately $49.10 and thus reduced her effective annual compensation to $99,840.00 from approximately $102,000.00; (2) eliminated her right to overtime pay; (3) eliminated any reference to salary, in favor of exclusively referencing hourly pay; (4) eliminated her right to be paid for unused vacation time upon termination; (5) eliminated her right to take vacation and education leave at her discretion; and (6) nullified the [Original Contract's] 30-day termination notice provision. [*See*] R.R. at 9a, 32a, 43a.

Finally, in rescinding the [LRAA], the . . . Proposed . . . Contract would also have immediately eliminated Claimant's guaranteed term of employment tenure up to and including October 9, 2026. [*See*] R.R. at 9a, 65a.

Claimant Br. at 25.

The Referee observed:

Here, [] Claimant and [] Employer testified to the terms of the [Original C]ontract as well as the [Proposed C]ontract. [] Claimant argued that she would not sign the [Proposed C]ontract due to an approximately $1[.00] less per hour [sic]. However, that figure is based only upon the assumption that [] Claimant would qualify for the terms of the [LRAA]. The new contracted hourly rate was a raise if not considering the loan repayment incentive, **as it was not guaranteed**. [] Employer credibly testified that the contract changes were unilateral. [] Claimant argued that a medical condition and a two-week leave of absence resulted in the [Proposed C]ontract. The Referee does not

16

accept [] Claimant's assumption.  The Referee finds that the [Proposed C]ontract was reasonable, and that [] **Claimant made no effort to negotiate the [Proposed C]ontract**.  [] Claimant made no attempt to maintain the employment relationship and had every intent to voluntarily separate.  As such, the Referee cannot find that [] Claimant has established a necessitous and compelling reason for leaving employment at the time [] Claimant did or that [] Claimant acted with ordinary common sense and made a good faith effort to preserve the employment.

R.R. at 70a (emphasis added).

Claimant challenges the UCBR's FOF 5 - "The $1,600[.00] per month was never a guaranteed payment[,]" FOF 13 - "Following receipt of the [Proposed C]ontract, [] Claimant made no attempt to negotiate the terms of the [Proposed C]ontract with [] Employer[,]" and FOF 16 - "Continuing work was available had [] Claimant voluntarily signed the [Proposed Contract]."  R.R. at 69a.

With respect to FOF 5, relating to the nature of Employer's obligation to pay Claimant $1,600.00 per month, the LRAA provided:

> [Employer] agrees to increase [Claimant's] monthly salary by $1,600.00 for the remaining term of her loans.  It is understood by both parties that this salary increase is for the purpose of loan repayment assistance and will terminate at the end of the loan repayment term, which is scheduled for October 9, 2024.  At that time, [Claimant's] salary will revert to her current salary or a salary to be re-negotiated between [Claimant] and [Employer].

R.R. at 65a.  However, as consideration therefor, Claimant agreed to remain in Employer's employ for 1 year after the loan repayment date and to "maintain a schedule of seeing an average of 260 or more patients per month."  *Id*.  Employer asserted at the Referee hearing that Claimant did not maintain the required scheduled patient numbers, but Employer continued to pay Claimant $1,600.00 per month.  *See* R.R. at 44a.  Because Employer's $1,600.00 payment was in consideration of Claimant's agreement to maintain the required scheduled patient numbers, Employer

17

was under no duty to pay that amount if Claimant failed to maintain her required schedule numbers. Thus, FOF 5 is supported by substantial evidence.

With respect to FOF 13, pertaining to Claimant's obligation to take steps to preserve the employment relationship, the LRAA's termination and the implementation of the Proposed Contract's new hourly rate would result in a $1.00 per hour reduction in Claimant's remuneration for the Proposed Contract's year term. The Proposed Contract included other changes to Claimant's employment terms, such as eliminating Claimant's right to be paid for unused vacation time upon termination and eliminating her right to take vacation and education leave at her discretion. Claimant contends that these changes were a substantial unilateral change to the terms of her employment, justifying her voluntary employment termination.

Assuming arguendo that Employer's proposed changes to Claimant's employment terms constituted a substantial unilateral change, Claimant was still required to demonstrate that she made a reasonable effort to preserve the employment relationship. In FOF 13, the Referee found that "[f]ollowing receipt of the [Proposed C]ontract, [] Claimant made no attempt to negotiate the terms of the [Proposed C]ontract with [] Employer." R.R. at 69a. Claimant contends that her testimony at the Referee hearing that she was willing to negotiate the Proposed Contract demonstrated her attempts to preserve the employment relationship. However, the UCBR did not find Claimant credible and discounted her testimony.[9] Claimant further argues that Counsel, "seeking to engage negotiations, sent [the August Letter] to Employer stating: 'If [Employer] is represented by counsel with respect to this matter, please ask [Employer's c]ounsel to contact me.'" Claimant Br. at 27 (quoting R.R. at 58a-60a). However, the August Letter primarily threatens

---

[9] This Court is bound by the UCBR's credibility determinations. *See Rivera v. Unemployment Comp. Bd. of Rev.*, 310 A.3d 348 (Pa. Cmwlth. 2024).

legal action for alleged discrimination based on Claimant's medical issues, violations of various laws, and breach of the Original Contract. It does not express Claimant's willingness to negotiate the Proposed Contract's terms. In fact, it states, in pertinent part: "[Claimant] declines to sign any new employment contract that would result in material adverse changes to her terms and conditions of employment." R.R. at 59a. It is clear that Claimant declined to discuss the Proposed Contract directly with Employer. *See* R.R. at 39a, 41a-42a. Therefore, substantial evidence supports FOF 13 that Claimant "made no attempt to negotiate the terms of the [Proposed C]ontract with [] Employer." R.R. at 69a.

Finally, with respect to FOF 16, Employer's Proposed Contract evidences Employer's availability of continuing work for Claimant. Accordingly, because FOFs 5, 13, and 16 are supported by substantial evidence, the UCBR properly concluded that Claimant did not have a necessitous and compelling reason for leaving her employment.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonelle Ensor,        :
     Petitioner    :
            :
     v.       :
            :
Unemployment Compensation   :
Board of Review,       :   No. 1427 C.D. 2023
     Respondent   :

## O R D E R

AND NOW, this 17th day of January, 2025, the Unemployment Compensation Board of Review's October 30, 2023 order is affirmed.

              _____
              ANNE E. COVEY, Judge